179 So. 84

## STATE v. WHITNEY NAT. BANK OF NEW ORLEANS.

No. 34135.

Jan. 10, 1938.

Rehearing Denied Feb. 7, 1938.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellant.

Charles J. Rivet, of New Orleans, for appellee.

PONDER, Justice.

This is a proceeding by rule to collect annual license taxes for the privilege of operating office buildings for the year 1933 under the provisions of section 37 of Act No. 190 of 1932.

Upon trial of the rule the lower court rendered judgment in favor of the plaintiff for the sum of $290.59 with 2 per cent. per month interest thereon from March 1, 1933, until paid, together with 10 per cent. attorney's fees on the amount of the principal and interest, and the defendant was enjoined from further pursuit of the business for which the taxes were due until the judgment was satisfied. The defendant appeals.

The defendant is chartered under the national banking laws and engaged in the national banking business in the city of New Orleans. The defendant owns and operates a main banking house and several branches in the city of New Orleans. The main banking house of the defendant, the Whitney building, is a fourteen-story building located on the corner of St. Charles and Gravier streets, with a wing or ell of a like number of floors having an entrance on Common street. The ground floor with the exception of the lobby newsstands and the basement barber shop, the second floor with the exception of a small space, the third floor with the exception of a small space, and a small portion of the fourth floor is used by the defendant in its banking business. That part of the first four floors not used by the defendant in its banking business is either available or leased to third persons for office purposes. All the remaining floors are either available or leased to third persons for offices. The defendant in its return to the rule admits that in the operation of that portion of the building not occupied by the defendant in its banking business there are employed the following employees: A building manager,

an assistant building manager, a clerk, a matron, a building superintendent, a chief engineer, an assistant engineer, a fireman, an electrician, a helper, a night watchman, 2 elevator starters, 10 regular elevator operators, 4 extra elevator operators, a night elevator operator, and 2 elevator relief men, in connection with the operation of the 10 passenger elevators located in said building, 4 window cleaners, 2 night elevator cleaners, 1 Venetian Blind cleaner, 1 toilet porter, 22 office porters, 3 night floor cleaners, and for the upkeep and repair of said building, 10 painters, 4 carpenters, 1 plasterer and 6 laborers or helpers, all of whom are likewise used in the repair and upkeep of the branch banking buildings of your respondent, hereinafter referred to, as well as all other buildings owned by respondent in the city of New Orleans.

The defendant's Poydras Street Branch Bank at Camp and Poydras streets is located in a seven-story building. The defendant in its return to the rule states that the ground floor with the exception of a small portion, which is leased to a homestead association, is used by the defendant in its banking business and the remaining floors are available or leased to third persons for offices. There are two elevators in operation in said building, operated by two day elevator men and one night elevator man, and there is additionally employed in the conduct of said building, an engineer, an assistant engineer, a carpenter, and three porters.

The defendant in its return to the rule states that its City Branch Bank on Caron-

delet street is located in a two-story building; that the ground floor is used by the defendant in its banking business, and that the second floor is divided into offices which are available or leased for offices. One elevator man and one porter are employed in the operation of the building.

The defendant states in its return that its Morgan Branch Bank is located at the corner of Chartres and Iberville streets in a four-story building. The ground floor is used by the defendant in its banking business and the upper floors leased to third persons. The elevator in the building is operated by the tenants and the employees for the upper floors are employed by the tenants.

The defendant owns and operates several other branch bank buildings which are entirely used in its banking business and are not involved in this suit.

The rentals received by the defendant from third persons amounted to $290,590, which is not disputed.

There are two defenses urged by the defendant in this appeal. The first defense urged by the defendant is, viz.:

"First, that the State of Louisiana cannot constitutionally levy any character of tax except such as the Congress of the United States specifically authorizes and permits, and that this license tax is not such a tax as is so authorized or permitted;"

Under this defense the defendant contends that the taxing power of a state in respect of a national bank is restricted to the taxation of its real estate and the taxation of its stockholders on their shares in the bank, and that this restriction is absolute. The defendant cites quite a number of authorities to that effect. It is conceded by the plaintiff that neither the privilege of operating a national bank nor the doing of a banking business as an instrumentality of the United States is subject to the taxing power of the state. The tax in question is a tax on the buisness of operating an office building and is not, directly or indirectly, a tax on the business of operating a national bank, or a tax, directly or indirectly, on the capital employed in, or the profits derived from, the banking business.

In the case of State v. Heymann, 178 La. 479, 151 So. 901, this court laid down the doctrine that the operation or managing of an office building, whether by the owner or by a lessee of the building, is now well recognized as a carrying on of an occupation or business, citing Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, at page 357, 55 L.Ed. 389, Ann.Cas.1912B, 1312; Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, at page 468, 68 L.Ed. 949; Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428. The defendant having engaged in a business separate and distinct from the banking business by engaging in the business of operating an office building would be subject to the taxes provided for by section 37 of Act No. 190 of 1932, which reads as follows:

"Any person, firm, corporation or association of persons operating any office building and deriving revenue therefrom, whether same is operated in connection with any

other business or not, shall pay a license tax equal to one-tenth (1/10) of one per cent of the gross rent or compensation therefrom; provided, however, that any person, firm, corporation or association of persons owning and occupying any portion of the said office building in the carrying on of its own business that only that part of the rent or compensation received from other persons, firms, corporations or association of persons shall be deemed as rent or compensation under this Act. Provided, further, that where the said building is owned by a subsidiary corporation, all of the capital stock of which, except directors qualifying shares, if any, are owned by said corporation, shall be considered the same as if the building were owned by the parent corporation and the area used by them for which rent is paid shall not be considered as rent under this section."

The second defense urged by the defendant is, viz.:

"Second, that the leasing by the Bank of the surplus space for offices is merely incidental to and inseparable from the conduct of its business as a national bank, and consequently cannot constitutionally be made the subject of the license tax in question."

The defendant contends that it is within its authority not only to own housing necessary for its immediate accommodation for the transaction of its banking business, but that it is authorized to make provisions for its future expansion. In other words, that it is within its authority to own a building sufficient to take care of its future expansion, and that it is within its authority to lease the space not presently used.

For the purpose of this decision we will concede that the defendant has the authority to acquire and own a building large enough for its present accommodations and its future expansion. However, from the size of the defendant's main bank building, it is very doubtful that the defendant's business will ever expand to such proportions as to require the entire building for its accommodation in its banking business. There is no dispute herein to the effect that neither the government of the state nor the government of the nation has the power to tax the means employed by the one or the other in conducting governmental functions. The exemption of instrumentalities of the state or federal government from taxation does not extend to anything outside of governmental functions. Indian Motorcycle Co. v. U. S., 283 U.S. 570, 51 S. Ct. 601, 75 L.Ed. 1277. Under the doctrine laid down in the case of Trinityfarm Construction Co. v. Grosjean, 291 U.S. 466, 54 S.Ct. 469, 78 L.Ed. 918 the immunity from taxation does not apply where the tax at most gives rise to a burden which is consequential and remote and not to one that is necessary, immediate, or direct. This same doctrine was followed in Alward v. Johnson, 282 U.S. 509, 51 S.Ct. 273, 75 L.Ed. 496, 75 A.L.R. 9. In the case of Helvering v. Powers, 293 U.S. 214, 55 S.Ct. 171, 174, 79 L.Ed. 291 the court, after reviewing the case of South Carolina v. U. S., 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737, stated: "We see no reason for putting the operation of a street railway in a dif-

ferent category from the sale of liquors. In each case, the state, with its own conception of public advantage, is undertaking a business enterprise of a sort that is normally within the reach of the federal taxing power and is distinct from the usual governmental functions that are immune from federal taxation in order to safeguard the necessary independence of the state." Under this doctrine the business of operating office buildings would not be immune from state taxation. The business of operating office buildings is of a sort that is normally within the reach of the state taxing power, and is distinct from the usual governmental functions of a national bank.

The defendant contends that the operation of the office buildings for revenue is incidental to and inseparably connected with its operation as a national bank. In the case of the First National Bank in St. Louis v. State of Missouri, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486, it was held to the effect that where a state statute prohibited a bank from maintaining within the state a branch bank the statute would apply to the national banks and that national banks were subject to the laws of the state in respect to their affairs, unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States; that national banks can rightfully exercise only such powers as are expressly granted, or such incidental powers as are necessary to carry on the business for which they are established; that the establishment of a branch bank is not the exercise of an incidental power within the meaning of Revised Statutes § 5136, 12 U.S.C.A. § 24 and note, conferring on national banks all incidental powers necessary to carry on the business of banking.

Hence it would follow under the same line of reasoning that the operation of office buildings is not the exercise of a power necessary to carry on the business for which national banks are established and the carrying on of such business is not beyond the taxing power of the state.

For the reasons assigned, the judgment is affirmed at defendant's cost.