## INDIAN MOTOCYCLE CO. *v.* UNITED STATES.

No. 5. Argued April 25, 1929. Reargued October 24, 27, 1930.—
Decided May 25, 1931.

*Mr. Monte Appel,* with whom *Mr. Frederick Schwertner* was on the brief, for Indian Motocycle Co.

*Solicitor General Thacher,* with whom *Assistant Attorney General Rugg* and *Messrs. Fred K. Dyar* and *H. Brian Holland* were on the brief, for the United States.

*Mr. John E. Hughes* filed a brief for the Excelsior Motor Mfg. & Supply Co. as *amicus curiae.*

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a certificate from the Court of Claims. At a prior term the certificate was dismissed as not in accord with applicable rules and then reinstated, as in *Wheeler Lumber Bridge & Supply Co.* v. *United States,* 281 U. S. 572. It since has been amended, and further argument has been heard.

The facts disclosed in the certificate are: In 1925 the plaintiff, a corporate manufacturer of motorcycles in Massachusetts, sold a motorcycle of its manufacture to the City of Westfield, a municipal corporation of that Commonwealth, for use by the city in its police service. A tax in respect of the sale was assessed and collected from the plaintiff under § 600 of the Revenue Act of 1924, c. 234, 43 Stat. 322. After due but unsuccessful effort to have the same refunded, the plaintiff brought suit in the Court of Claims to recover the money so exacted from it—the tax being assailed as invalid, as it had been in the application for a refund, on the ground that it was imposed in contravention of the constitutional immunity of the State and her governmental agencies from federal taxation. The parties submitted an agreed statement showing the facts here recited, and the Court of Claims then certified to this Court the question (we state its substance), where a motorcycle is sold by its manufacturer to a municipal

corporation of a State for use by such corporation in its police service, can the transaction be taxed under § 600 of the Revenue Act of 1924 consistently with the constitutional immunity of the State and her governmental agencies from federal taxation.

Our jurisdiction to entertain certificates from the Court of Claims, and the limitations on that jurisdiction, are explained in *Wheeler Lumber Bridge & Supply Co.* v. *United States, supra.* The present certificate when tested by the rules there stated is unobjectionable. It presents a question of law suitably distinct and definite. And while, with the facts settled by an agreed statement accepted below, it is apparent that a decision of the question either way will be decisive of the case, this affords no ground for declining to entertain the certificate. *United States* v. *Mayer*, 235 U. S. 55, 66, and cases cited.

Section 600 of the Revenue Act of 1924, c. 234, 43 Stat. 253, 332, is part of Title VI entitled Excise Taxes. The section provides that there " shall be levied, assessed, collected and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentage of the price for which so sold or leased." Motorcycles are among the articles enumerated and the applicable tax is five per centum of the price for which they are sold. Manufacturers, producers and importers are required severally to make returns of their sales and to pay the tax.

This taxing provision is a reënactment, with minor changes not material here, of a provision which was included in the Revenue Act of 1917, c. 63, § 600, 40 Stat. 300, 316, and repeated in succeeding enactments. It is now § 600 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 93; U. S. C., Title 26, § 881.

Both parties rightly regard the tax as an excise, and not a direct tax on the articles named. But they differ as

to the transaction or act on which it is laid. Counsel for the plaintiff insist it is laid on the sale. Counsel for the Government regard it as laid on manufacture, production or importation, or, in the alternative, on any one of these *and* the sale. We think it is laid on the sale, and on that alone. It is levied as of the time of sale and is measured according to the price obtained by the sale. It is not laid on all sales, but only on first or initial sales—those by the manufacturer, producer or importer. Subsequent sales, as where purchasers at first sales resell, are not taxed. Counsel for the Government base their contention on the requirement that the tax be paid by " the manufacturer, producer or importer "; but we think this requirement is intended to be no more than a comprehensive and convenient mode of reaching all first or initial sales, and that it does not reflect a purpose to base the tax in any way on manufacture, production or importation. Importation, as such, already was otherwise taxed, c. 356, § 1, par. 369, 42 Stat. 858, 885, U. S. C., Title 19, § 121, par. 369, and in our opinion the words relied on fall short of expressing a purpose to subject it to a further tax.

This view of the tax is not new. The administrative bureau adopted it at the outset and has adhered to it up to the present time. The regulations issued under the Revenue Act of 1917 said on this point: " The tax is on the sale of the articles mentioned," 20 Tr. Dec. Int. Rev. 365; and this is repeated in the later regulations. 21 Tr. Dec. Int. Rev. 412; 23 Tr. Dec. Int. Rev. 68; 24 Tr. Dec. Int. Rev. 56; 26 Tr. Dec. Int. Rev. 592. Indeed, the tax is frequently spoken of in the regulations as a sales tax. And it is so described in reports of congressional committees dealing with revenue bills in which it was retained. Sen. Rep. No. 398, p. 40, 68th Cong., 1st Sess.; House Rep. No. 1, p. 16, 69th Cong., 1st Sess. While not controlling, this administrative and legislative action

strengthens our conclusion, drawn from the taxing provision, that the tax is laid on the sale, and on that alone.

The cases of *Cornell* v. *Coyne,* 192 U. S. 418, and *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459, cited by counsel for the Government, are not pertinent; for both related to taxes distinctly imposed on manufacturing.

With this understanding of the nature of the tax, we come to the question propounded in the certificate.

It is an established principle of our constitutional system of dual government that the instrumentalities, means and operations whereby the United States exercises its governmental powers are exempt from taxation by the States, and that the instrumentalities, means and operations whereby the States exert the governmental powers belonging to them are equally exempt from taxation by the United States. This principle is implied from the independence of the national and state governments within their respective spheres and from the provisions of the Constitution which look to the maintenance of the dual system. *Collector* v. *Day,* 11 Wall. 113, 125, 127; *Willcuts* v. *Bunn,* 282 U. S. 216, 224–225. Where the principle applies it is not affected by the amount of the particular tax or the extent of the resulting interference, but is absolute. *McCulloch* v. *Maryland,* 4 Wheat. 316, 430; *United States* v. *Baltimore & Ohio R. Co.,* 17 Wall. 322, 327; *Johnson* v. *Maryland,* 254 U. S. 51, 55–56; [1]

---

[1] Respecting the immunity from state taxes this Court there said: "With regard to taxation, no matter how reasonable, or how universal and undiscriminating, the State's inability to interfere has been regarded as established since *McCulloch* v. *Maryland,* 4 Wheat. 316. The decision in that case was not put upon any consideration of degree but upon the entire absence of power on the part of the States to touch, in that way at least, the instrumentalities of the United States; 4 Wheat. 429, 430; and that is the law today. *Farmers & Mechanics Savings Bank* v. *Minnesota,* 232 U. S. 516, 525, 526."

*Gillespie* v. *Oklahoma,* 257 U. S. 501, 505; *Crandall* v. *Nevada,* 6 Wall. 35, 44-46.

Of course, the reasons underlying the principle mark the limits of its range. Thus, as to persons or corporations which serve as agencies of government, national or state, and also have private property or engage on their own account in business for gain, it is well settled that the principle does not extend to their private property or private business, but only to their operations or acts as such agencies;[2] and, in harmony with this view, it also has been held where a State departs from her usual governmental functions and "engages in a business which is of a private nature," no immunity arises in respect of her own or her agents' operations in that business.[3] While these decisions show that the immunity does not extend to anything lying outside or beyond governmental functions and their exertion, other decisions to which we now shall refer show that it does extend to all that lies within that field.

It has been adjudged that bonds of the United States issued to raise money for governmental purposes, and the interest thereon, are immune from state taxation, because such a tax, even though inconsiderable in amount and imposed only on holders of the bonds, would burden the exercise by the United States of its power to borrow money. *Weston* v. *Charleston,* 2 Pet. 449, 468;[4] *The Banks* v. *The Mayor,* 7 Wall. 16; *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 513; *Northwestern Ins. Co.* v. *Wisconsin,* 275 U. S. 136, 140. And this immunity has been held to

---

[2] *Thomson* v. *Pacific Railroad,* 9 Wall. 579, 591; *Railroad Co.* v. *Peniston,* 18 Wall. 5, 34, 36-37; *Central Pacific R. Co.* v. *California,* 162 U. S. 91, 125, 126; *Baltimore Ship Building & Dry Dock Co.* v. *Baltimore,* 195 U. S. 375, 382. *Alward* v. *Johnson,* 282 U. S. 509. And see *McCulloch* v. *Maryland, supra,* p. 436; *Osborn* v. *Bank of United States,* 9 Wheat. 738, 867; *Clallam County* v. *United States,* 263 U. S. 341, 345.

[3] *South Carolina* v. *United States,* 199 U. S. 437.

include bonds of a municipal corporation in a Territory issued to raise money for municipal purposes, the decision being put on the ground that such a corporation is an instrumentality of the United States exercising delegated governmental powers. *Farmers & Mechanics Savings Bank* v. *Minnesota*, 232 U. S. 516, 525. It also has been adjudged that bonds of municipal corporations in the several States issued to raise money for public municipal purposes, and the interest thereon, are immune from federal taxation, and this on the ground that such corporations are representatives of the States and exercise some of their powers, and that under the implications of the Constitution the governmental agencies and operations of the States have the same immunity from federal taxation that like agencies and operations of the United States have from taxation by the States. *Pollock* v. *Farmers Loan & Trust Co.*, 157 U. S. 429, 584–586, 601, 652, 653; s. c. 158 U. S. 601, 618, 693.

It has been further adjudged that the salary of an officer of the United States is immune from state taxation because the salary is the " means by which his services are procured and retained " and its taxation by a State would burden the exertion by the United States of powers belonging to the latter. *Dobbins* v. *Commissioner of Erie County*, 16 Pet. 435, 448, 449. And " for like reasons " it has been held that the salary of a state officer is immune from federal taxation. *Collector* v. *Day*, 11 Wall. 113, 124.

Other applications of the principle are shown in cases where it has been ruled that a state excise on the transmission of telegrams is void as to messages sent by officers of the United States on public business, because the excise,

---

[4] This Court there said: " The right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government. To any extent, however inconsiderable, it is a burden on the operations of government."

although exacted only of the telegraph company, is, so far as it is based on the government messages, a tax on the means employed by the United States in carrying its constitutional powers into effect, *Western Union Tel. Co. v. Texas,* 105 U. S. 460, 466; *Williams* v. *Talladega,* 226 U. S. 404, 418–419; and that bonds exacted by a municipal corporation of a State as a condition to granting licenses the issue of which is committed by the State to such corporation cannot be taxed by the United States, even though the tax be collected only from the licensees, because such a tax would burden the exercise of a function belonging to the State and city in their governmental capacity, *Ambrosini* v. *United States,* 187 U. S. 1, 8.

In *Panhandle Oil Co.* v. *Knox,* 277 U. S. 218, this Court was called upon to determine whether a state excise laid on the sale of gasoline, and collected only from the dealer making the sale, could be applied to sales to the United States for the use of its coast guard fleet and its veterans' hospital, and the ruling, made after much consideration, was that the excise could not be so applied consistently with the constitutional principle. The Court there held that while a State may impose a tax on a dealer " for the privilege of carrying on trade that is subject to the power of the State," she may not lay any tax on sales to the United States by which it " secures the things desired for its governmental purposes," and further [p. 222]:

" It is immaterial that the seller and not the purchaser is required to report and make payment to the State. Sale and purchase constitute a transaction by which the tax is measured and on which the burden rests. . . . To use the number of gallons sold the United States as a measure of the privilege tax is in substance and legal effect to tax the sale. [Citing cases.] And that is to tax the United States—to exact tribute on its transactions and apply the same to the support of the State."

We think it follows from these decisions, particularly from the one last cited, that the sale of motorcycles to a state agency, such as a municipal corporation, for use in its police service is not subject to taxation by the United States. The maintenance of a police service by such a state agency, like the maintenance of a coast guard service by the United States, is a governmental function; and that function extends—in one instance as much as in the other—to the purchase of equipment and supplies needed to render the particular service efficient. Under the constitutional principle the exertion of such a function by a State or a state agency has the same immunity from federal taxation that like exertions by the United States or its agencies have from state taxation. Here the tax is laid directly on the sale to a governmental state agency of an article purchased for governmental purposes. The sale and purchase constitute a single transaction, in which the purchaser is an essential participant. Without that participation the sale could not be effected. Thus, the transaction falls within the class which the United States cannot tax consistently with the constitutional principle.

The decisions in *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514, 526; *Wheeler Lumber Bridge & Supply Co.* v. *United States,* 281 U. S. 572, 579; and *Willcuts* v. *Bunn,* 282 U. S. 216, 225 *et seq.,* cited by counsel for the Government, are all distinguishable, for the taxes there in question were not laid on transactions involving an exertion of governmental functions and their bearing on governmental operations was so indirect or remote as to place them outside the principle which is applicable here.

The question propounded in the certificate is answered in the negative.

MR. JUSTICE HOLMES regards *Panhandle Oil Co.* v. *Knox* as controlling in principle and upon that ground acquiesces in this decision.

MR. JUSTICE STONE, dissenting.

I think the question should be answered in the affirmative. The implied immunity of one government, either national or state, from taxation by the other should not be enlarged. Immunity of the one necessarily involves curtailment of the other's sovereign power to tax. The practical effect of enlargement is commonly to relieve individuals from a tax, at the expense of the government imposing it, without substantial benefit to the government for whose theoretical advantage the immunity is invoked. Compare *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 522–4; *South Carolina* v. *United States*, 199 U. S. 437, 455; *Railroad Co.* v. *Peniston*, 18 Wall. 5, 30–31; see also *Missouri* v. *Gehner*, 281 U. S. 313, 323; *Macallen Co.* v. *Massachusetts*, 279 U. S. 620, 637.

This is especially the case where, as here, the sole ground of the immunity is that, although the tax is an excise collected by one government from an individual normally subject to it, the incidence of the tax may conceivably be shifted to the other government. In such a case it is not clear how a recovery by the taxpayer would benefit directly the government supposed to be burdened; and the assumption of indirect benefit in the case of a tax of this type necessarily rests upon speculation rather than reality. See *Lash's Products Co.* v. *United States*, 278 U. S. 175. It is significant that neither the federal nor any state government has appeared by intervention or otherwise to support this claim of immunity in cases in which the taxpayer has urged it upon us.

The court has many times held, and as recently as in *Educational Films Corp.* v. *Ward*, 282 U. S. 379, that an excise tax, imposed directly on the individual, is not invalid because indirectly it may burden either the state or the national government. See also *Willcuts* v. *Bunn*, 282 U. S. 216, 225; *Denman* v. *Slayton*, 282 U. S. 514. A bequest

to the United States or a state may be subjected to an inheritance tax by the other, *United States* v. *Perkins,* 163 U. S. 625; *Snyder* v. *Bettman,* 190 U. S. 249; see *Greiner* v. *Lewellyn,* 258 U. S. 384, although the consequent indirect burden is apparent. Even if it could be said that there is some reason, which the Court has never attempted to state, for the distinction which was made by the decision in *Panhandle Oil Co.* v. *Mississippi,* 277 U. S. 218, between an excise on sales to a government and one on legacies, the fact of the shifting of the burden would seem to be at least less apparent in the case of a sale.

In the *Panhandle Oil* case, it was held that this shifting of the burden of a state tax from the seller to the buyer was sufficient to render the tax invalid where the buyer was an agency of the United States, and it was assumed that the burden of the sales tax involved was so inevitably passed on to the buyer as to require this result. With this assumption economists would not, I believe, generally agree. Many hold that whether the burden of any tax paid by the seller is actually passed on to the buyer depends upon considerations so various and complex as to preclude the assumption *a priori* that any particular tax at any particular time is passed on.[1] In some conditions of the market, the burden remains with the seller, or even may be shifted back from the seller to the producer by the reduction of the producer's price, rather than forward to the consumer by an increase of the seller's price.[2]

[1] Bastable, Public Finance (3rd ed.) pp. 372–377, 387–388, 548, 577–578, 588; Brown, The Economics of Taxation, pp. 95–96, 134–135, 326–328; Bye and Hewitt, Applied Economics, pp. 453–456; Ely, Outlines of Economics (5th ed.) p. 794; Hobson, Taxation in the New State, pp. 52–56; Lutz, Public Finance, pp. 317–319; Marshall, Principles of Economics, (6th ed.) pp. 413–415; Nicholson, Elements of Political Economy, pp. 456–460; Seligman, Shifting and Incidence of Taxation, (5th ed.) pp. 218–219, 253–254; Shoup, The Sales Tax in France, pp. 322–327; Proceedings, National Tax Association, 1907, p.

582

Whatever factors determine whether the burden does in fact shift, I do not think it can be said that a tax paid by the seller in any given case necessarily burdens the purchaser either more or less, because in form laid on the sale, as in the *Panhandle Oil* case, or upon transportation of goods sold f. o. b. destination, as in *Wheeler Lumber Co.* v. *United States*, 281 U. S. 572, or on manufacture alone of articles intended for sale, see *Cornell* v. *Coyne*, 192 U. S. 418, or on both manufacture and sale.

These considerations are, to me, persuasive that the broad rule announced in the *Panhandle Oil* case ought not to be extended, even if we were not required by our own decisions to limit it; and that we ought not to strain the words of the statute to bring this case within the authority of that one. It seems to be conceded that if the tax in the present case were levied on manufacture alone, we would be bound to hold it valid, *Cornell* v. *Coyne, supra;* see *Lash's Products Co.* v. *United States, supra.*

The rule of the *Panhandle Oil* case has been limited in *Wheeler Lumber Co.* v. *United States, supra,* holding that a tax on transportation, which in that case was necessary to effect delivery by the seller, was valid because not in terms a tax on the sale, as it was in the former. Even if verbal distinction, unfounded in economic realities, must be made between the two cases so that both may stand as authoritative expositions of the Constitution, consid-

---

432; *id.*, 1920, pp. 175–176, 179, 212, 266; *id.*, 1922, pp. 108–109; *id.*, 1923, pp. 297–298; *id.*, 1924, pp. 307, 314, 347–349, 354, 355; *id.*, 1929, pp. 271, 406–407; Bulletin, National Tax Association, 1923–1924, p. 170; *id.*, 1929–1930, p. 260; National Industrial Conference Board, General Sales or Turnover Taxation, pp. 52–54. Others, without discussion of those factors which affect and often obscure the fact of shifting, hold the contrary: Comstock Taxation in the Modern State, p. 121; Bulletin, National Tax Association, 1923–1924, p. 174.

² Bastable, pp. 376, 548; Brown, p. 96; Lutz, p. 319; Hobson, p. 54; Marshall pp. 413–414; all *supra* Note 1; Bulletin, National Tax Association, 1923–1924, p. 170.

erations of substance rather than of form should lead us to choose that one which would restrict the doctrine of the *Panhandle Oil* case to the tax imposed in unqualified terms on sales to which it was applied in that case. The present tax is not levied in such terms, exclusively on sales, but is effective only when the seller both manufactures or imports and sells. With respect to the incidence of its burden on the buyer, so far as we can know, it does not differ from a tax on the manufacture of goods, payable when sold. See *Lash's Products Co.* v. *United States, supra.* I think that the *Wheeler Lumber* case, rather than the *Panhandle Oil* case, should control in determining its validity.

Mr. Justice Brandeis concurs in this opinion.