## FREEDMAN v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 6327.

Circuit Court of Appeals, Third Circuit.

Aug. 23, 1937.

Wm. A. Schnader, of Philadelphia, Pa., and John W. Townsend, of Washington, D. C., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Howard P. Locke, Sp. Assts. to the Atty. Gen., for respondent.

Herbert Pope, of Chicago, Ill., amicus curiæ.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BUFFINGTON, Circuit Judge.

This is an appeal by the taxpayer from an order of the federal Tax Board assessing income tax against him, and the question involved is: "Was the annual salary of $3,000 received by petitioner in 1932 for services rendered as an attorney in the Department of Justice of the Commonwealth of Pennsylvania exempt from the Federal Income tax?" The facts, which are not in dispute, are thus stated by the Tax Board:

"The department of justice and the department of banking are administrative divisions of the Commonwealth of Pennsylvania. The head of the department of justice is the attorney general and the head of the department of banking is the secretary of banking, these offices being provided for by statute. The attorney general has statutory power 'to appoint and fix the compensation of special deputy attorneys general, and special attorneys, to represent the Commonwealth, for any department, board, or commission thereof, in special work or in particular cases.' Purdon's Penna.Stats. title 71, § 296 [71 P.S.Pa. § 296]. The secretary of banking is by statute given broad powers over banks within the commonwealth. When it appears to him that a bank is in an unsafe or unsound condition he may, after notice and hearing and with the consent of the attorney general, take possession of the business and property of the bank; under certain condi-

tions he may take possession without hearing and without the attorney general's consent. When he takes possession of a bank, he is vested with 'all the rights, powers, and duties of a receiver appointed by any court of equity in this Commonwealth;' while in possession of the bank he is 'the representative of the creditors' thereof. The banking law provides that, in the case of banks the property of which is in the possession of the secretary of banking, all expenses in connection with such possession and of continuing the business or of liquidation 'shall first be payable out of the funds of' such bank 'including the compensation of special deputies, assistants, and others employed by the secretary to assist him in such proceedings; the allowance of all such expenses to be subject to the approval of the court.' Purdon's Penna.Stats. title 7, §§ 29, 49 [7 P.S. Pa. §§ 29, 49].

"The petitioner was assigned to work under special deputy attorneys general in Philadelphia County in connection with legal matters pertaining to closed banks in that county. Such closed banks were being liquidated by the secretary of banking pursuant to statute. The petitioner's duties consisted of attempting to collect debts due such closed banks, rendering legal opinions to the deputy receivers in charge thereof, handling the legal matters for the banking department that came up from surrounding counties, prosecuting suits in court, consulting with creditors, depositors, and stockholders of closed banks concerning their claims, procuring substitute trustees for trust estates being administered by such banks, preparing, filing, and presenting accounts in the Orphans' Court, preparing data in connection with the proposed state banking code, and 'in general anything that was assigned by the Special Deputy Attorney General at the time.' Such attorneys were considered by the department of justice as 'available for any purpose at any time.'

"The petitioner handled legal matters for the state banking department in connection with the liquidation of the Northern Central Trust Co., the Darby Bank & Trust Co., the United States Bank & Trust Co., the Central Trust & Savings Co., the Mortgage Security & Trust Co., the Park Trust Co., and the Wharton Trust Co., among other closed banks in the Philadelphia area. The petitioner was one of approximately twenty lawyers assigned to like work in Philadelphia County.

"The particular work and the matters to which the petitioner gave attention were determined by the attorney general's office. He was free to use his discretion only in simple matters. In regard to all proposed litigation and appeals, he was required first to consult with his superior officers. He was required to follow prescribed forms issued by the attorney general's office as to preparation of documents and pleadings. His legal opinions were reviewed and often revised by his superiors before being issued. Likewise, briefs were reviewed and frequently entirely redrafted. All matters of policy in particular cases were decided by the attorney general and his deputies. The petitioner's advice to depositors of closed banks was limited to matters on which his superiors had ruled. All such attorneys were instructed to take no steps and render no opinions on any legal problem involved in closed banks without approval of the attorney general. * * *

"The petitioner received no compensation for his services other than his $3,000 salary, but was reimbursed for his expenses. He was furnished with necessary office facilities. He was required to use official letterheads furnished by the department of justice, and signed his letters as 'attorney' for the department of justice. The files in matters handled by him were considered the property of the state and were turned over by him to his successor when his employment was terminated. While the department of justice could have required all his time and had first call on his services, he was permitted to engage in private practice. In 1932 he spent more than 50 percent of his time on state business. He had to give up certain regular employment to accept the employment in the department of justice. His professional income for 1932, aside from the $3,000 salary, was $2,735.60. He was not a member of a law firm.

"Petitioner's salary was paid to him semi-monthly by checks drawn by representatives of the state banking department in charge of closed banks in Philadelphia, the checks being countersigned by the secretary of banking at Harrisburg."

The taxpayer paid income tax on the $2,735.60, his professional income. He claimed his salary of $3,000 was exempt.

In pursuance of the statutory authority noted above, "to appoint and fix the compensation of Special Deputy Attorneys General and Special Attorneys to repre-

sent the Commonwealth, for any department, board, or commission thereof, in special work or in particular cases," the Attorney General of the state of Pennsylvania, on October 2, 1931, notified the taxpayer that "it gives me pleasure to appoint you an attorney in this Department assigned to the liquidation work of the Department of Banking. Your salary will be at the rate of $3,000.00 per annum. The Special Deputy Attorneys General who are assigned to this work in Philadelphia are being advised of your appointment and that you will be available to assist them in any way in which they may find it necessary to call upon you."

The uncontradicted testimony of the taxpayer was that "the Department of Banking had absolutely no authority over me. They did not instruct me as to what banks I was to work. The Attorney General did that." The Deputy Attorney General testified: "It was considered that these men were available for any purpose at any time with the Department of Justice. They were controlled entirely by that department." In view of this uncontradicted evidence, we hold it proven that the taxpayer was an employee of the state acting by its Attorney General. Moreover, it will be noted that the Tax Board made no finding that he was not an employee of the state, but in that regard limited itself to the negative statement, "we are not satisfied that petitioner can properly be classified as an employee of the Commonwealth of Pennsylvania." Being an employee of the state or the nation, being engaged in recognized governmental work—in this case the vital Department of Banking, Therrell v. Commissioner (C.C.A.) 88 F. (2d) 869—it follows that the quantum of the employee's pay, the means by which he is paid, are features which do not on the one hand determine the liability of the national employee to state taxes or the state employee to federal taxes. The nation and the state, within their respective spheres of governmental administration, are not subject to taxation imposed by other sovereignties. Within their own province, they are exempt from—to them—alien burdens in the way of taxation. Indian Motocycle Co. v. United States, 283 U. S. 570, 51 S.Ct. 601, 75 L.Ed. 1277.

The same constitutional principle that prevents the state of Pennsylvania from taxing the income of special attorneys of the United States equally prevents the United States from taxing the income of special attorneys of the commonwealth of Pennsylvania. As the national banks are "instrumentalities, means and operations" whereby the federal government exercises a governmental control over them, so the state exercises like governmental control over state banks, for, as said in Indian Motocycle Co. v. U. S., 283 U.S. 570, 51 S.Ct. 601, 603, 75 L.Ed. 1277, "this principle is implied from the independence of the national and state governments within their respective spheres and from the provisions of the Constitution which look to the maintenance of the dual system."

So regarding, and without discussing the elaborate arguments and citations of the respective parties—all of which have been duly considered—we limit ourselves to setting aside the order of the Tax Board. This view is in line with the decisions of this circuit in Commissioner v. Coughlin (C.C.A.) 87 F.(2d) 670, and Commissioner v. Hindman (C.C.A.) 88 F.(2d) 44.