FIGUEROA & GAUTIER, demandante y apelante, *v.* MANUEL V. DOMENECH, hoy R. SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 7457.—*Sometido:* Junio 17, 1938. *Resuelto:* Julio 28, 1938.

*Emilio S. Belaval*, abogado de la apelante; *Hon. Procurador General B. Fernández García y M. Rodríguez Ramos, Procurador General Auxiliar*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La demandante es una sociedad mercantil dedicada entre otras actividades a la venta de vehículos de motor. Su negocio está organizado de tal modo que tiene en distintas ciudades de la Isla lo que llama "dealers" y "sub-dealers", que son personas o firmas comerciales a quienes vende automóviles a un precio inferior del fijado para las demás personas, lo que permite a éstos revender los vehículos así comprados con un margen de beneficio. Los "dealers" y "sub-dealers" no son agentes de la demandante y no tienen con ella otra relación que la de vendedor y compradores. También vende la demandante por cuenta propia a otras personas que desde luego no gozan del precio especial de que disfrutan los "dealers" y "sub-dealers".

Desde el 11 de agosto de 1931 hasta el 30 de abril de 1932, la demandante vendió a "dealers" y "sub-dealers" los automóviles y camiones que aparecen en el estado informativo que acompañó como *exhibit* de la demanda, en el cual consta el precio especial que los "dealers" y "sub-dealers" pagaron por cada vehículo. Trató la demandante de pagar el impuesto de 10 por ciento que fija la Ley de Arbitrios sobre vehículos de motor, tomando por base el precio especial a que habían sido vendidos, pero el Tesorero demandado rehusó aceptar dicho precio como precio de venta corriente en Puerto Rico y entonces, a medida de transacción, la demandante fijó el precio que estimó el precio corriente a los automóviles vendidos de que antes se ha hecho referencia, sin perjuicio de establecer la acción correspondiente para recobrar el exceso de contribución que de ese modo pagase.

Pagó la demandante bajo protesta todos y cada uno de los arbitrios así fijados y radicó entonces la demanda de este caso dentro del término legal solicitando la devolución, no de la totalidad del impuesto pagado, sino de aquella parte del mismo correspondiente al aumento de precio que se hizo en transacción con el Tesorero, aumento que asciende en total a $4,411.32.

Excepcionó primero y contestó después el demandado. Se celebró el juicio oral el 6 de febrero de 1935 y con fecha 25 de agosto del año siguiente la corte dictó sentencia desestimando la demanda sin especial condenación de costas. Fué contra esta sentencia que se interpuso el presente recurso, alegándose como motivos de revocación la comisión de los siguientes errores, que imputa la apelante a la corte de distrito, a saber:

"1. La Corte de Distrito cometió error al estimar no probado por la demandante apelante 'cuál era el precio de distribución que prevalecía en el mercado al realizarse las ventas o sea el precio de venta "corriente" en Puerto Rico.'

"2. La Corte de Distrito cometió error al estimar que el precio a que vendió Figueroa & Gautier a sus revendedores no era el precio del mercado en Puerto Rico para tales operaciones.

"3. La Corte de Distrito cometió error al no permitirle probar a la demandante apelante el discrimen que se cometía contra la demandante apelante en relación con otros negocios algunos de automóviles también en Puerto Rico, en el cobro de los arbitrios.

"4. La Corte de Distrito cometió error al no considerar como probado el caso de la demandante apelante."

Los cuatro errores señalados por la apelante giran alrededor de la interpretación que deba darse a la sección 16 de la Ley número 85 aprobada el 20 de agosto de 1925 (Leyes de ese año, pág. 585), según fué enmendada por la Ley número 83 de 6 de mayo de 1931 (Leyes de ese año, pág. 505), en relación con la secciones 4 y 37 de la misma ley. Por esa razón vamos a considerar conjuntamente los errores señalados por la apelante.

La sección 16 de la Ley número 85 de 1925, según fué enmendada por la número 83 de 1931, en lo pertinente dice así:

"Sección 16.—Se cobrará y pagará como impuesto de rentas internas, por una sola vez sobre todos los artículos siguientes y aquéllos comprendidos en esta sección de la ley, que fueren vendidos, traspasados, usados, consumidos o introducidos en Puerto Rico:

"*.                    .         .         .         .         .         .         .*

"8. *Vehículos de motor y lanchas y botes de motor.*—Sobre todo vehículo de motor, incluyendo automóviles, autowagones, camiones, etc., que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de diez (10) por ciento sobre el precio de venta en Puerto Rico;..."

El último párrafo del precepto transcrito impone el arbitrio de 10 por ciento *sobre el precio de venta en Puerto Rico.* Veamos ahora qué se entiende por "precio de venta" dentro del significado de la citada ley. Su sección 4 lo define así:

"Sección 4.—*Definición de la frase 'precio de venta'.*—Para los efectos del cobro y del pago de las contribuciones que por la presente se prescriben, la frase 'precio de venta' en todos los casos deberá interpretarse como significativa:

"(*a*) En el caso de la venta de artículos al por mayor, el precio exacto a que se venda el artículo o mercancía que esté sujeto a la contribución.

"(*b*) En el caso de la venta de artículos al detalle o a precio por unidad, el precio exacto a que fuere vendido el artículo o mercancía sujeto a la contribución.

"(*c*) .      .      .      .      .      .      .

"En ningún caso deberá aceptarse como el precio de venta, para los fines de la contribución, un precio menor que aquél que se pague corrientemente en el mercado de Puerto Rico por artículos similares en el momento que el artículo o mercancía tributable sea vendido, traspasado, usado, consumido, manufacturado o introducido en Puerto Rico."

La sección 37 de la misma ley impone a los traficantes la responsabilidad del pago del impuesto sobre todos los artículos introducidos por ellos. Dicha sección dice así:

"Los traficantes serán responsables del pago de impuestos al vender o traspasar el artículo tributable a otro traficante o a un consumidor."

De la evidencia resulta que las ventas que la demandante hace a sus "dealers" y "sub-dealers" son a precio por unidad, y la sección 4, en su último párrafo transcrito, prescribe que en ningún caso deberá aceptarse como el precio

de venta para los fines de la contribución, *un precio menor que aquél que se pague corrientemente en el mercado de Puerto Rico* por artículos similares en el momento en que el artículo o mercancía tributable sea vendido, traspasado, usado, consumido, manufacturado o introducido en Puerto Rico. A nuestro juicio este último párrafo nos da la luz necesaria para la correcta resolución de la controversia.

En armonía con todas las disposiciones legales antes citadas, el precio de venta a los efectos de la imposición y cobro del impuesto no es el precio especial a que la demandante vende a sus "dealers", sino el precio corriente en el mercado de Puerto Rico en la fecha de tal venta, a menos que se diese el caso, muy improbable por cierto, de que el precio de venta al "dealer" sea superior al precio del mercado, en cuyo caso aquél serviría de base para la imposición del arbitrio.

Si interpretásemos la ley en la forma que pretende la demandante, tendríamos que hacer caso omiso del último párrafo que de la sección 4 hemos transcrito anteriormente, que dispone que en ningún caso deberá aceptarse como el precio de venta para los fines de la contribución un precio menor que aquél que se pague corrientemente en el mercado de Puerto Rico por artículos similares, etc. Tal interpretación no puede sostenerse, porque infringe la conocida regla de hermenéutica legal dispositiva de que al interpretar una ley debe seguirse la intención legislativa y a ese fin es preciso dar efecto a las distintas disposiciones de la ley, interpretándolas unas a la luz de las otras, habida cuenta de que forman parte de un todo. 25 R.C.L. 1006, Sec. 247.

El precio especial a que la demandante vendía sus automóviles a sus "dealers" y "sub-dealers" no era el precio que corrientemente se pagaba por ellos en el mercado de Puerto Rico. Por el contrario, claramente aparece de la prueba de la propia demandante que ese precio era inferior no solamente al que los revendían después los "dealers", si que también al que la propia demandante los vendía al

público en general cuando se trataba de una venta de contado en que no recibía automóviles usados como parte del precio de venta. Este último es precisamente, a nuestro juicio, el precio corrientemente pagado en el mercado. La apelante invoca el caso de *Indian Motocycle Co.* v. *U. S.*, 283 U. S. 570, 75 L. Ed. 1277, pero ese caso no es aplicable al presente, porque en él se interpreta la sección 600 de la Ley de Rentas Internas de 1924, que impone un arbitrio de 5 por ciento sobre el precio de venta o de arrendamiento, y dicha ley federal no contiene como la nuestra el precepto contenido en la sección 4, supra, dispositivo de que en ningún caso se aceptará como el precio de venta para los fines de la contribución un precio menor que el que se pague corrientemente en el mercado de Puerto Rico.

Como dijimos al principio de esta opinión, el tesorero rehusó aceptar como precio de venta el especial que medió en las transacciones habidas entre la apelante y sus "dealers" o "sub-dealers". Al no aceptar ese precio, como medio coercitivo, rehusó también venderle las tablillas si antes no dejaban solucionada la controversia y pagaban el impuesto correspondiente. Fué entonces que la apelante, como medida de transacción, sometió el informe que se unió a la demanda, en el cual aparece el precio especial de venta al "dealer" y el que la apelante propuso como precio corriente en el mercado, sujeto desde luego a pagar el arbitrio bajo protesta y someter a los tribunales la cuestión. Sobre esa base fué que se pagó el impuesto. Podrá, quizás, en algunos casos, ser mayor que el precio que corrientemente se pague en Puerto Rico, pero la apelante no demostró que fuera otro el precio, pues si bien su testigo y socio, Sr. José J. Figueroa, habló en términos generales del beneficio que podía tener la demandante en la venta de automóviles de contado a particulares, no se determinó de manera específica el precio corrientemente pagado en Puerto Rico por los distintos estilos de vehículos que aparecían como vendidos en el *exhibit* que se acompañó a la demanda.

Lo expuesto nos lleva a la conclusión de que *la sentencia apelada es correcta y procede su confirmación.*

El Juez Asociado Señor Travieso no intervino.