**AROUND THE WORLD SHOPPERS CLUB, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 55–60.**

United States District Court
D. New Jersey.

Oct. 31, 1961.

Max L. Rosenstein, Newark, N. J., Daniel Gersen, New York City, of counsel, for plaintiff.

David M. Satz, Jr., U. S. Atty., Trenton, N. J., by Louis T. Gallo, Asst. U. S. Atty., Newark, N. J., and Daniel M. Dwyer, Washington, D. C., and Charles K. Rice, Asst. Atty. Gen., James P. Garland, Jerome Fink, Joyle C. Dahl, Washington, D. C., of counsel, for defendant.

WORTENDYKE, District Judge.

Plaintiff, a New Jersey corporation, seeks recovery in this action of the amount of Federal excise taxes paid by the plaintiff upon sales of merchandise during the period October 1 to December 31, 1954, amounting to $924.90, together with interest thereon accruing subsequently to May 1, 1959, the date of assessment. It is admitted that the District Director of Internal Revenue made demand for payment on May 8, 1959, and that the said $924.90 was paid by the plaintiff to the District Director on May 21, 1959, accompanied by a claim for refund which was amended November 20, 1959. It is further admitted that the assessment was based upon the provisions of Chapter 19 of the Internal Revenue Code of 1939, § 2400 et seq., 26 U.S.C. § 2400 et seq., and that the claims for refund were disallowed in full on January 6, 1960. Plaintiff predicates jurisdiction in this Court upon the provisions of 28 U.S.C. §§ 1340 and 1346.

Plaintiff contends that the sales of merchandise upon which the tax was assessed took place without the United States and were not made by the plaintiff; and that the tax transactions consisted of importations within the exemption provided in 19 U.S.C.A. § 1321 and in §§ 8.3(b) and 9.6 of Title 19 of the Code of Federal Regulations.[1]

The defendant denies the jurisdiction of this Court, and alleges that on May 1, 1959 an excise tax assessment in the total amount of $45,954.45 for the period April 1, 1954 through December 31, 1957 was made against the plaintiff, and that only a part of that assessment, to wit $924.90, was paid. It also denies that the transactions referred to in the complaint were exempt from the tax assessed as contended by the plaintiff.

By way of counterclaim, the defendant seeks recovery from the plaintiff of the unpaid balance of the tax assessed on May 1, 1959, in the sum of $45,029.-55, together with interest and costs.

At the pretrial conference, the plaintiff stated that it operated an "Of the Month Club" enterprise in which persons subscribe for a specified number of months and receive a "gift" from a different foreign country for each month of the period of their subscription. The "gift" in each case is mailed directly to the "Club Member" from a foreign source of supply. Plaintiff stated the issues to be "whether these sales fall within the compass of the Federal Retail Sales Tax, Retail Excise Tax." It is the contention of the plaintiff that the statute imposes the tax only upon sales (Indian Motorcycle Co. v. United States, 1931, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277) made within the United States, and that the place of sale is the place where title is transferred, namely, where the items of merchandise are placed in the mail in the foreign country for transmission to the subscriber in the United States.

1. The cited statutes empower the Secretary of the Treasury to authorize by regulation, the disregarding of differences less than $3 between the total duties or taxes deposited or tentatively assessed with respect to the entry of any merchandise and the total amount of duties or taxes actually accruing thereon, and the admission of articles free of duty, and of any tax imposed by reason of importation, provided the aggregate value of the articles imported by one person on one day, and exempted from payment of duty, shall not exceed certain specified maxima. Pursuant to these statutory provisions, the Secretary, in § 8.3(b) and 9.6 of the Code of Federal Regulations has directed the Collector of Customs to pass free of duty and Internal Revenue tax any importation having a value not exceeding $1, unless the shipment is one of several lots covered by a single order sent separately for the purpose of securing free entry.

Plaintiff took the further position that it had never taken title to the merchandise, but that it was shipped directly by the foreign supplier to the subscriber in the United States; thus precluding the repose of title in the plaintiff at any time. Plaintiff does concede, however, that payment for each item is made to the manufacturer or supplier of the merchandise by the plaintiff, which also prepares labels bearing the name and address of the Club "member" and sends these labels to the supplier for its use in mailing the merchandise to the addressee.

The controlling issue with respect both to the complaint and to the counterclaim is found in the question whether any tax became due upon the transactions upon which the taxes were assessed.

In lieu of trial the parties have entered into a written stipulation of the facts upon which the Court is requested to base its decision.

The parties agree that some of the items of merchandise sent to plaintiff's "members" would be subject, by their nature, to an excise tax, and that neither the Club nor the foreign supplier charged or collected the amount of the tax, or any part thereof, against or from the ultimate recipients of the merchandise.

On May 1, 1959, the District Director of Internal Revenue for the District of New Jersey assessed Federal Retailers Excise Taxes (26 U.S.C. § 4001 et seq.) against the plaintiff for the second quarter of 1954, through the fourth quarter of 1957, in the total amount of $45,954.-45. On May 19, 1959, the plaintiff paid the tax assessed for the fourth quarter of 1954 only, together with penalties and interest thereon, in the amount of $924.90, leaving an unpaid balance of $45,029.55. On May 20, 1959 the taxpayer filed a claim for refund of the payment of $924.90 for the fourth quarter of 1954, and an amended claim for this refund was filed on November 23, 1959. On January 6, 1960, plaintiff's claims for refund were disallowed.

The transactions upon which the taxes in question were assessed are described in the stipulation as follows:

Plaintiff entered into contracts with members of the general public, hereinafter referred to as Members, by the terms of which a Member was entitled to receive, for each month of the period of his membership, an item of merchandise manufactured in a foreign country to be shipped directly to the Member from abroad. Payment for such merchandise was made to the plaintiff in advance, at the time the application for membership was forwarded by the Member to the plaintiff. Upon acknowledgment of receipt of the membership application, plaintiff prepared labels bearing the Member's name and address which were forwarded to various manufacturers abroad, selected by the plaintiff, to be used by such manufacturer for the purpose of addressing the merchandise which it transmitted by mail directly to the addressee.

Plaintiff solicited membership in its Club by advertisements in newspapers and magazines, as well as by mail. Generally the Club Member was not previously advised respecting the items of merchandise which he would receive during the period of his membership.

Negotiations were entered into by representatives of the plaintiff with the foreign manufacturers of the merchandise items which were to be shipped to Club Members, and these negotiations resulted in the entry of the plaintiff into a formal contract with each manufacturer setting forth the price to be charged by the manufacturer to the Club, and the quantity and mode of shipment of the merchandise. In the event a Club Member received an item in a damaged condition and made complaint thereof to the Club, the plaintiff would request the manufacturer to replace the merchandise with a new item at the manufacturer's expense. It was the general practice of the plaintiff to cause the foreign manufacturers to send to the Club Members items which were duty-

free by reason of having a customs value of $1 or less, in accordance with the provisions of §§ 8.3 and 9.6 of Title 19 of the Code of Federal Regulations. Amendments of the cited sections of these Regulations were effected in 1955 upon application by representatives of the Club.

Annexed to the stipulation are various exhibits, reference to which will be made hereinafter.

The Government contends that the transactions between the plaintiff and its Members on the one hand, and between the plaintiff and the foreign suppliers on the other, involve two sales of the items of merchandise which are ultimately received by the Club Member. One of these sales is by the foreign supplier to the Club and the other is a resale of the merchandise by the Club to the Member. The Government recognizes, however, that the foreign suppliers have no dealings with the Club Members, but merely mail the articles to the Members as directed by the Club, —looking only to the Club for payment, and responsible only to the Club respecting adjustments of claims for non-delivery or defectiveness of an article. The foreign supplier sells to the Club, and not to the Members of the Club. Moreover, the Club exercises complete dominion over the items of merchandise, through its right under contract with the supplier, to direct the supplier to ship the merchandise to the Club Member. Accordingly, the Government contends that title to the merchandise passes from the suppliers through the Club to the Club Members; the Club being in effect the retailer and the foreign supplier the wholesaler. Hence, contends the Government, the second sale by the Club to the Club Member becomes subject to the Retailers' Excise Tax.

Plaintiff's reliance upon General Electric Co. v. Masters Mail Order Co., 2 Cir., 1957, 244 F.2d 681, certiorari denied 355 U.S. 824, 78 S.Ct. 32, 2 L.Ed.2d 39, for support of its cause of action here, is misplaced. Masters was a diversity action brought under the New York Fair Trade Act for injunctive relief upon a fair trade agreement, recognized by the McGuire Act, 15 U.S.C.A. § 45 (a) (1)–(5). The law of the State of New York was, of course, applicable. Erie R. Co. v. Tompkins, 1937, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Defendant was a wholly owned subsidiary of Masters, Inc, a New York retail corporation, which had been enjoined in New York from violating its fair trade contract with the plaintiff, and was twice fined for violating that injunction. The parent Masters, Inc., caused the subsidiary to be organized as a Maryland corporation, which commenced business in the District of Columbia, where there were no fair trade laws. It was found as a fact that the object of this move was to permit the subsidiary to sell General Electric appliances to consumers in fair trade states below fair trade prices valid in those States, by the device of direct mail order selling. Defendant, accordingly, shipped General Electric appliances from its store in the District of Columbia to consumers in New York, at prices below those set by the plaintiff under its contract with its signatory retailers. The Court of Appeals reversed the District Court in granting an injunction, upon the ground that the New York Fair Trade Act might not be extended to govern a resale in a non-fair trade State without conflicting with the provisions of the McGuire Act. The Appellate Court concluded that an enforcement action under the New York statute could succeed only if the resales of the merchandise covered by the fair trade contract occurred in New York. Hence, the critical question in that case was where the resale occurred. In answering this question the Court recognized that the intent of the parties governed the passage of title between them and that because in the case before it, the dominant object of both seller and buyer was to take advantage of the absence of resale price maintenance legislation in the District of Columbia, the mutual intention must be deemed to have placed the passage of title in that District even if the seller

pays the carrier for delivery of the goods to the buyer (Uniform Sales Act § 19, Rule 5). The Court found that under the defendant's arrangement for doing business, title passed in the District of Columbia. The New York law which the diversity jurisdiction invokes would apply the substantive law of the District of Columbia to the facts in the case. My construction of the stipulation of facts in the case at bar renders the decision in the Masters case inapposite.

From the stipulation and the annexed exhibits, the factual background for the contentions of the respective parties is generally as follows:

Plaintiff, hereinafter Club, is a New Jersey corporation with its principal office in the City of Newark in that State.

Through appropriate advertising media it invites the public to apply for membership in Club by signing and forwarding an application therefor, in form annexed to or included in the advertisement, together with a sum of money purporting to entitle the applicant to receive, at his own address, postpaid, an article of merchandise manufactured in or supplied from a foreign country, each month during the period of membership for which he applies. The nature and identity of the particular item of merchandise which the Club Member will receive in any month is determined by the Club without advance disclosure to the Member.

Upon receipt by Club of an application for membership therein, together with the required amount of money appropriate to the duration of membership sought, a label or labels bearing the name and address of the applicant for membership is prepared and transmitted by Club to one or more suppliers or manufacturers abroad, with whom Club has a contract for the supplying and transmission to the Club's members of specified articles of merchandise.

Typical of the Club's contract with a foreign supplier is the written agreement embodied in exhibit 10–A annexed to the stipulation of facts in this case, between Club and "Anri, Srl. S., Cristina-Gardena Prov. Bolzano, Italy". By the terms of that agreement, which is signed by or in behalf of both parties thereto, the supplier agrees to deliver to Members of the Club "1,000 hand carved shadow boxes kitchen scene, your reference #72118 in accordance with the sample submitted by you on September 12, 1955 modified by the addition of two hand carved figures and four hooks." The supplier agrees that the appearance and quality of each item sold under the agreement will be at least as good as those of the sample submitted, with the modification stated. For this merchandise, the Club agrees to pay the supplier, in United States currency, "60¢ per shadow box, such price to include individual packaging, outer markings, publicity insert, and delivery to the local post office in Innsbruck, Austria, for mailing to the members of AWSC (Club). AWSC also agrees to pay the postage at the sample postage rate." Club agrees to pay supplier promptly for all shipments upon receipt of invoices substantiated by packing slips. Each item of merchandise to be mailed by the supplier under the agreement is to be clearly and legibly marked "Austria". The supplier further agrees with Club to mail the merchandise ordered under the agreement to persons and at the times specified by Club, and to package and hold ready for mailing all 1,000 shadow boxes ordered thereunder during the month of November, 1955. Further provisions of the agreement embody the undertaking of the supplier to box and wrap each article attractively but strongly enough to prevent breakage, and in the event of damage to send a replacement at supplier's expense to the Club Member who has received the damaged article, but upon the order of the Club. Club retains the right to approve the type of boxing and wrapping in advance, and supplier agrees to advise Club promptly the date and quantity of each mailing. It is further provided that the supplier shall promptly forward

to Club any correspondence which supplier may receive either from Club Members or from any other person, in connection with the operations of Club, and the supplier further agrees not to answer any such correspondence. Club retains the right to inspect the merchandise delivered and in the event of rejection, supplier agrees to refund the cost of or replace the item. Finally, if any merchandise is returned to supplier because of non-delivery to addressee, supplier agrees to credit Club with the full value of such merchandise if received by supplier in good and acceptable condition.

I agree with the Government's contention that the chain of transactions through which a given article of merchandise, subject to the excise tax, moves from the foreign supplier to the Club Member consists of two sales or contracts to sell. To only one of these transactions are both Club and Member parties. By Club's acceptance of an application for membership and its retention of the accompanying fee, a contract for the sale of future goods arises between the Club, as seller, and the applicant for membership, as buyer. This contract of sale contemplates that performance is complete upon the receipt by the Member, at his home address, of an article or articles of merchandise, to be appropriated to the contract by the Club, in accordance with the terms of its invitation which evoked the application for membership.

 In its advertising, the Club represents that by reason of the purchasing power advantage of the American dollar, it (Club) is able to purchase merchandise abroad at a lower cost than that at which it would be available to the Club Member in this country. Typical of this advertising is the following:

"How, you ask, can members receive such valuable gifts for just $2.00 each? Foreign nations are in urgent need of American dollars to support native industry. They are glad to offer tremendous mer-

chandise values in exchange. Thus you get more for your money—and at the same time you are doing your bit to improve world conditions by lending a helping hand to our world neighbors. * * * It costs nothing to join the club and there are no dues or fees. You pay only for the regular monthly selections on any of these plans:

" 3 consecutive shipments . . $ 6.00
" 6 consecutive shipments . . 11.50
"12 consecutive shipments . . 22.00"

In order to perform its undertaking to its Members, Club is compelled to procure, from the foreign suppliers, commitments to make available, for application by the Club to the requirements of its contracts with its Members, items of merchandise to be shipped by the supplier. The agreements which Club makes with its foreign suppliers are the means which enable Club to perform its contractual obligations with its Members. The legal effect of these supply contracts, providing, as they do, for specific goods at specific prices, is that of a contract of purchase by the Club from the supplier of the merchandise. This merchandise the Club, in turn, appropriates to its contracts to sell to its Members. The sales by Club to Members are retail sales (Roland Electrical Co. v. Walling, 1946, 326 U.S. 657, 673, 66 S.Ct. 413, 90 L.Ed. 383) of future goods as the terms are defined in N.J. S.A. 46:30–1 and N.J.S.A. 46:30–7(1). Until the goods are appropriated to the contract of sale they remain unascertained. N.J.S.A. 46:30–23. Where, as in this case, the contract of sale requires the Club, as seller, to deliver the goods to the Member, as buyer, to the latter's address, the title to the goods does not pass until the goods have been so delivered. N.J.S.A. 46:30–25, Rule 5. The contract of sale between the Club and its Member comes into existence upon the acceptance by the Club, in New Jersey, of the Member's application and accompanying fee. Performance of this contract to sell on the part of the Club requires that it cause to be delivered to

the buyer's residence merchandise to be appropriated to the contract by the Club under whose direction and instruction the merchandise is to be transmitted by prepaid post from the place of business of the foreign supplier. The contracts of sale, therefore, between Club and its Members are governed by New Jersey law and by the provisions of the Uniform Sale of Goods Law of that State, N.J.S.A. 46:30–1 et seq. The Club's contract to sell to its Member was made in New Jersey when the Club accepted the Member's application and fee. The Club performed its contract by securing a commitment from the supplier. Since the contract was made and performed in New Jersey, the law of that State (the Uniform Sale of Goods Act) governs. Scudder v. Union National Bank, 1875, 91 U.S. 406, 23 L.Ed. 245.

■ Plaintiff's claim for exemption upon the authority of §§ 8.3(b) and 9.6 of the Code of Federal Regulations is misplaced. These sections afford an exemption from "duty and internal revenue taxes" arising from the act of importation and *NOT* from the sale of goods upon which the excise tax herein involved is predicated. The sales resulting from the Club's performance of these contracts of sale are retail sales and, to the extent that the merchandise constituting the goods sold falls within any of the categories enumerated in the statute, 26 U.S.C. § 4001, the sale becomes subject to the 10% tax therein provided.

Since the parties have stipulated that the nature and character of the merchandise involved in the sales assessed by the District Director in this case are within the provisions of the cited section, the plaintiff is not entitled to a refund of the amount which it has paid on account of the taxes assessed; but the defendant is entitled to recover upon its counterclaim for the unpaid portion of the tax assessed, with interest as prayed.

An order may be submitted in conformity with the views herein expressed.