430 F.Supp. 823 (1976)
STATE of Georgia, DEPARTMENT OF TRANSPORTATION
v.
UNITED STATES of America.
Civ. A. No. 75-1155A.
United States District Court, N. D. Georgia, Atlanta Division.
December 30, 1976.
*824 Arthur K. Bolton, Atty. Gen., David A. Runnion, Asst. Atty. Gen., Atlanta, Ga., for plaintiffs.
Sherman D. Johnson, William D. Mallard, Jr., Asst. U. S. Attys., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., Gregory R. Schwandt, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendants.

ORDER
RICHARD C. FREEMAN, District Judge.
This is an action brought by the State of Georgia to procure the refund of a tax collected pursuant to § 4491 of the Internal Revenue Code of 1954, 26 U.S.C. § 4491. The action is presently before this court on cross-motions for summary judgment.
Section 4491(a) of the Internal Revenue Code provides for the imposition of a tax on the use of any taxable civil aircraft during the applicable year. The Department of Transportation of the State of Georgia owns several aircraft upon which this tax has been imposed. Plaintiff alleges that collection of this tax renders § 4491 unconstitutional as applied, because it demands payment by an organ of state government to the federal government in violation of the constitutional doctrine of inter-governmental immunity. Plaintiff further contends that the tax is levied directly against state activities which yield no profit and which comprise distinctly governmental, rather than propriety, functions. In response, defendant contends that the payment demanded by § 4491 is a service charge levied pursuant to the commerce power of the United States.
In an order of this court dated August 16, 1976, the parties were instructed to brief the question of whether the imposition of the instant tax "unduly interferes" with the performance of the State's governmental functions, see City of New York v. United States, D.C., 394 F.Supp. 641 (1975)[1] by directly displacing "the state's freedom to structure integral operations in areas of traditional governmental functions." National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The parties seem to concede sub silentio that the National League of Cities decision *825 is dispositive of the instant action. However, the parties vary markedly as to the proper reading of that decision.
In National League of Cities, supra, the Supreme Court held unconstitutional Congress' attempt through amendment of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. to dictate minimum wage requirements for state and municipal employees. The state contends that in that decision the Supreme Court defined undue interference in terms of the directness rather than the magnitude of the impact which the federal legislation had upon state goals and instrumentalities. On the other hand, defendant contends that National League of Cities requires this court to measure the substantiality of the dollar impact upon the program in question and to determine whether, on balance, the interference generated by the federal tax is indeed "undue."
The opinion does not lend a great deal of light to the distinction which the instant parties propound. National League of Cities was decided by a five to four majority with four justices joining in the Court's opinion and one justice concurring and filing a separate opinion. Mr. Justice Rehnquist, writing for the Court, states at several junctures that "factual disputes as to the effect of the amendments [are] not critical to our disposition of the case." National League of Cities v. Usery, supra, 96 S.Ct. at 2471 (1976). Nevertheless, a great deal of Justice Rehnquist's analysis is based upon the substantially increased costs which would be visited upon the states as the result of the federally imposed minimum wage guidelines in that decision. Therefore, it is difficult to determine whether the court was really addressing a situation such as the instant one in which the impact of a federal statute enacted ostensibly pursuant to the commerce and taxing power falls directly upon the state, albeit with rather a modest pecuniary force and effect.[2]
The pivotal opinion explaining the Court's reasoning is Mr. Justice Blackmun's concurring opinion. Justice Blackmun characterized the Court's opinion as setting forth a balancing approach which would "not outlaw federal power in areas such as environmental protection, where the federal interest is demonstrably greater and where state facility compliance with imposed federal standards would be essential." National League of Cities v. Usery, supra, 96 S.Ct. at 2476 (1976).[3]
We, however, are inclined to conclude that the tax on the operation of a state-owned airplane for exclusively governmental purposes is not the kind of preeminent federal interest envisioned by Justice Blackmun. Congress has the power to determine that the users of an airport engaged in interstate commerce should be responsible to pay for its maintenance. However, when the user is a State engaged exclusively in an activity which is one traditionally entrusted to the state's care, we believe that Congress does not have the power at the outset to enforce its determination against the State, see Indian Motocycle v. United States, 283 U.S. 570, 51 S.Ct. *826 601, 75 L.Ed. 1277 (1930), unless there is a federal interest at stake in peculiar need of protection. In the instant case, we can perceive no federal interest of such magnitude warranting the imposition of a federal tax on the State under the circumstances herein.
This is not a situation such as Mr. Justice Blackmun posits, where the failure to comply by one governmental entity may destroy the efficacy of an entire federal program. Although the federal government does have a peculiar interest in controlling the number and spacing of incoming and outgoing flights, there exists no parallel overriding federal policy in terms of being able to tax each and every such flight. Furthermore, the relatively small $4,000.00 tax payment here in controversy, although not substantial enough to stop the State's programs in their tracks, might be significant enough to affect the States basic policy choices as to whether or not air travel is the most efficacious means through which to accomplish its governmental obligations. For instance, the state might now elect to use fewer air patrols and more ground level reconnaissance in detecting and combatting forest fires. This would constitute the sort of federal interference which "directly supplants considered policy choices of the State's elected officials and administrators . . ." National League of Cities v. Usery, supra, 96 S.Ct. at 2472 (1976). In sum, the imposition of the federal tax sub judice can be viewed as direct federal interference with the State's performance of its governmental functions.
However, our decision today need not turn solely upon the degree to which the federal tax interferes with the state's setting of priorities. Implicit in both Mr. Justice Rehnquist's majority opinion and Mr. Justice Blackmun's concurring opinion, is the notion that, in the absence of special circumstances such as an emergency or the need to protect a peculiar and pre-eminent federal interest, the federal government has no power to tax the entities through which a state carries forward its essential and traditional governmental functions. In the instant case, we find neither a vital federal interest nor the existence of exigent circumstances justifying the imposition of the federal aircraft tax. Therefore, we find that the tax sub judice is unconstitutional as applied to aircraft owned by the State of Georgia and operated for the purpose of accomplishing essentially governmental functions.
Accordingly, for the reasons hereinabove expressed, plaintiff's motion for summary judgment is hereby GRANTED and defendant's motion for summary judgment is hereby DENIED.
IT IS SO ORDERED.
NOTES
[1] City of New York v. United States, supra, and the other cases cited in defendant's brief were decided prior to the Supreme Court's decision in National League of Cities. The latter decision revived to a degree presently not ascertainable a doctrine which most authorities thought dead. Therefore, while the reasoning presented in City of New York is appealing, the authorities on which that reasoning is based are no longer applicable. Accordingly, the City of New York decision must also be viewed as superceded.
[2] Upon careful reflection we believe that Justice Rehnquist is correct in noting that the facts are not vital to the National League of Cities holding. In that case the Court was addressing the question of whether or not the federal government has the power to take the action which it purports to take. The question of whether or not this power exists is not a question of degree which can be placed on a monetary scale and weighed. The power either exists or it does not exist. Cf. Wilson v. New, 243 U.S. 332, 37 S.Ct. 298, 61 L.Ed. 755 (1917). In the instant case, such power does not exist.
[3] Apparently, the balancing which Justice Blackmun contemplates is a balancing of federal and state interests in subject matter terms rather than in monetary terms. In the example which Justice Blackmun posits, the federal interest in uniformity in environmental regulation would exceed the state interest in promulgating its own standards, regardless of the monetary impact which the federal statute or regulation could have upon the states. Therefore, Justices Blackmun and Rehnquist would most likely concur in the view that the outcome of the instant action should not depend upon a quantitative determination with respect to the permissible limits of federal taxation of state instrumentalities. On the contrary, the power to tax in a particular subject matter area either exists or it does not exist, and is, therefore not a question of degree.