Lee R. BROWN, d.b.a. Brown's Top & Seat Cover Co., Plaintiff,

v.

Ellis CAMPBELL, Jr., District Director of Internal Revenue at Dallas, Texas, Defendant.

Civ. 6486.

United States District Court
N. D. Texas,
Dallas Division.

May 16, 1958.

Frank B. Appleman and Benjamin L. Bird, Fort Worth, Tex., for plaintiff.

Heard L. Floore, U. S. Atty., Fort Worth, Tex., John C. Ford, Asst. U. S. Atty., Dallas, Tex., for defendant.

DAVIDSON, Chief Judge.

This case involves the refund of manufacturer's excise taxes (Sec. 3403 et seq., I.R.C.1939, 26 U.S.C.A. § 3403 et seq.) paid by plaintiff for the periods August 1952 through December 1954. When the case was tried here before on a Stipulation of Facts, two questions were involved: (1) whether the custom made automobile seat covers, fabricated, installed and sold by plaintiff were articles subject to the manufacturer's excise taxes; and (2) the proper method of computing the tax.

In line with some former practices and interpretations this Court held that the articles were not subject to taxes. Thus the Court did not reach the second question. On appeal (245 F.2d 662, 666) the United States Court of Appeals for the Fifth Circuit held that plaintiff was a manufacturer who sold at retail, that the tax was applicable and further:

"The method of computing the tax and the correct amount of the tax were not reached by the district court. These questions should be there decided. For further proceedings to make such a determination, the cause is remanded."

In keeping with this mandate, a further trial was held upon the Stipulation of Facts and the testimony of the plaintiff, one of the largest seat cover retailers in this area, a witness Marks and other witnesses, including the Internal Revenue Agent who computed the tax in this case. In testimony of the Agent he restricted himself largely to the method he used in computing the plaintiff's tax. From the testimony, it appears that the vendors of seat covers may be divided into four categories:

1. Manufacturers of ready made seat covers who sell only at wholesale;

2. Retailers who buy ready made seat covers, put them in stock and sell them to customers without installation (usually department and automobile stores, etc.);

3. Retailers who buy ready made seat covers from wholesale manufacturers and sell and install such seat covers on the customer's automobile; and

4. Retailing manufacturers who buy materials and measure, cut and fit them to the customer's automobile (this category is referred to as the custom made seat cover business).

Plaintiff Brown belongs in the fourth category. He sold no ready made seat covers but carried a varied stock of materials which he purchased from wholesalers in large quantities in rolls and bolts. His customers would choose the desired material from the stock and plaintiff would measure the customer's automobile, cut, sew and fit the material to the automobile seats. The prices to his customers were fixed by the cost of the materials, rent on his establishment and other items of overhead, tailoring and installation costs and a profit.

The tax here involved is imposed upon the manufacturer's selling price and by Section 3441, I.R.C., Congress provided a means for determining such price in the case of a business falling in the fourth category mentioned above. Section 3441 provides in material part as follows:

"(a) In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment * * *.

"(b) If an article is—

"(1) sold at retail; * * *

"the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Commissioner."

It will be noted that the tax is based on the price. Thus it might be intended that the Commissioner should compute the tax upon the particular transaction as a master and not by a fixed schedule for all taxpayers. Manifestly the expenses must vary; the rents, labor and overhead will vary the price in one local-ity from that in another and in one establishment over another.

It will be noted that the statute contemplates, in the case of sales at retail of custom made seat covers (where, obviously, there is involved no figure which definitely can be pointed to as the manufacturer's selling price), the tax is to be computed "on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Commissioner."

We do not think that statute or the rules applicable clothe the Commissioner with the power to fix or to raise or lower a tax rate. Such would amount to delegation of legislative power.

Indeed we doubt his authority to fix a rate for a community or the nation under rule of averages, resulting from a series of hearings. For the purpose of this decision, however, we will concede his power to fix tax rates such as we now consider, but such power carries with it the absolute responsibility of fixing a reasonable rate, failing in which the act is arbitrary and invalid.

■ The determination of a price "in those cases where the manufacturer sells only at retail" is not the determination of "the price for which such articles are sold * * * by manufacturers and producers thereof * * *"—as required by the statute. There is nothing in the statute which makes the price of the manufacturer selling only at retail a criterion. On the contrary, the correct tax basis is the price charged generally by manufacturers and producers—the manufacturer's wholesale price. Consequently, as a matter of law, it appears that the Commissioner has not made a determination required by the statute and the action of the Internal Revenue Agent—admittedly based only on Rev.Rul. 42—is not such a determination.

Moreover, it appears that the so-called determination made in Rev.Rul. 42 is unreasonable; there it was determined that 75 per cent of the retail list price was the manufacturer's selling price—in brief, that a 25 per cent markup was ade-

quate to cover the retailer's necessary expenses and profit. From testimony in this case, it appears that the manufacturer's wholesale price of ready made seat covers is approximately 40 per cent of the retailer's selling or list price and that this situation prevails not only in this area but over most of the country. The direct testimony was to this effect; in addition, numerous wholesaling manufacturers' catalogues were introduced and examined, in all of which it appeared, with respect to all types of ready made seat covers, that the manufacturers' wholesale price approximated 40 per cent of the retail selling price suggested by the wholesaler as well as the prevailing retail price actually charged. There was uncontested testimony which showed that in view of the retailer's expenses and costs, a mere 25 per cent markup would be confiscatory and that no custom made seat cover retailer could stay in business on such a markup. There was further evidence that the margin of profit where 60 per cent of price is considered as the retailer's markup is no more than reasonable. An illustration will prove this point: it appears that the plaintiff's gross retail sales for the entire year of 1954 approximated $5,800; if Rev.Rul. 42 is correct, this would mean that only $1,650 (25 per cent of $5,800) would be allowed as the non-manufacturing cost of doing business (which certainly would include such items as transportation, sales expenses, advertising, installation expenses, etc.) and a profit. In addition to the cost of the materials, Plaintiff Brown had other direct expenses such as sales expenses, transportation costs, and the wages of skilled and ordinary labor in tailoring and installing the covers, as well as the usual items of overhead—taxes, rent, office and store expenses, utilities, obsolescences, collections, etc. In view of the state of evidence in this case, the Court is left no alternative but to find and conclude (1) that the price for which seat covers are sold, in the ordinary course of trade, by manufacturers and producers thereof, is 40 per cent of the retail selling price;

and (2) that the Commissioner's determination of such price—if Rev.Rul. 42 is the determination required by law—as being 75 per cent of the retail selling price is, arbitrary and unreasonable. Manhattan General Equipment Co. v. Comm., 297 U.S. 129, 56 S.Ct. 397, 80 L. Ed. 528; Koshland v. Helvering, 298 U. S. 441, 56 S.Ct. 767, 80 L.Ed. 1286; Miller v. Comm., 5 Cir., 1956, 237 F.2d 830; H. R. Laboratories v. U. S., 2 Cir., 1945, 151 F.2d 118.

In his investigation of plaintiff's business, the Internal Revenue Agent noted that plaintiff sold and installed seat covers for companies, including new and used car dealers; he held that sales to such dealers were sales at wholesale and the whole retail sales price to be the manufacturer's wholesale selling price and, after deduction of a $5 installation charge, he considered the residue as the base for the tax on such sales; on the other hand, where sales were made to individuals, the Agent first took 75 per cent of the retail sales price as the theoretical manufacturer's wholesale price, then deducted the $5 installation charge and multiplied the remainder by 8 per cent to get the tax. Thus, the tax determined by him on a set of seat covers selling for $30 was $2 ($30 less $5, times 8 per cent) if sold to a new or used car dealer, whereas the tax on an identical sale of seat covers sold to an individual was $1.-40. Plaintiff Brown charged only one price for a particular grade and type of seat cover without regard to the character of the customer; he neither had for sale or sold any ready made seat covers; he installed all seat covers he sold; he testified that he sold only at retail, never at wholesale and never altered his fixed price for any reason. There is no evidence that any seat cover plaintiff sold was sold for re-sale or that any automobile sent to him by new and used car dealers belonged to them as distinguished from their customers or that such dealers were re-selling the covers to their customers.

We think the Circuit Court very aptly said: "We are unable to see any reason

for the distinction between seat covers made for an owner who is also the user of the car and those made for an owner who as a dealer holds the car for sale.".

Moreover, it appears that the defendant, by the third and fifth Stipulation of Facts in this case, did not reserve the point. I, therefore, hold that the plaintiff had no established bona fide practice of selling seat covers in substantial quantities at wholesale (Reg. 46, Sec. 316.15) and that plaintiff did not sell seat covers at wholesale.

■ Apparently, upon the assumption that the tax, installation charges and similar exclusions mentioned by Section 3441(a) are automatically taken into account if 40 per cent of the retail sales price is determined to be the correct tax base, plaintiff does not claim any reduction of the manufacturer's wholesale price because of such exclusions. Therefore, there is no occasion to determine whether the tax base, computed according to Section 3441(b), is to be reduced by the exclusions mentioned in Section 3441(a).

I therefore hold that plaintiff's gross retail sales for the periods involved were:

| | | Sales | |
|---|---|---|---|
| | Date | No. of Seat Covers Sold | Selling Price |
| 1952 | Aug. 18 to Sept. 31 | 55 | $1,336.75 |
| | October | 32 | 819.00 |
| | November | 27 | 762.88 |
| | December | 32 | 854.55 |
| Totals | | 146 | $3,773.18 |
| 1953 | January | 28 | $ 760.98 |
| | February | 19 | 544.18 |
| | March | 21 | 545.46 |
| | April | 30 | 900.16 |
| | May | 26 | 772.76 |
| | June | 38 | 1,103.52 |
| | July-Aug.-Sept. | 85 | 2,464.20 |
| | Oct.-Nov.-Dec. | 47 | 1,364.72 |
| Totals | | 294 | $8,455.98 |
| 1954 | Jan.-Feb.-March | 47 | $1,461.20 |
| | April-May-June | 79 | 1,952.71 |
| | July-Aug.-Sept. | 63 | 1,520.54 |
| | Oct.-Nov.-Dec. | 40 | 961.72 |
| Totals | | 229 | $5,896.17 |

and that 40 per cent thereof is the correct tax base against which the 8 per cent rate is to be multiplied to determine the correct tax.

Plaintiff's attorneys are directed to prepare and submit to defendant's attorneys, for approval as to form, and to this Court, findings, conclusions and computations in keeping with the foregoing opinion.