**G. L. SMITH, d/b/a Snuffy Smith Motor Company, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20170.**

United States Court of Appeals
Fifth Circuit.

July 3, 1963.

Rehearing Denied Oct. 9, 1963.

Barefoot Sanders, U. S. Atty., Dallas, Tex., Louis F. Oberdorfer, Asst. Atty. William A. Friedlander, Attys., Martha Gen., Lee A. Jackson, David O. Walter, Joe Stroud, Asst. U. S. Atty., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, Chief Judge, and RIVES and MOORE *, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

This is an appeal from a judgment of the district court granting the Government's motion for summary judgment and holding that the taxpayer, appellant here, was liable for the excise tax imposed by Section 4061 of the Internal Revenue Code of 1954 on sales of used cars imported by appellant from Germany and that the tax so imposed should not have been computed under Section 4216(b) (1) of the Internal Revenue Code of 1954.

Taxpayer is the owner of a sole proprietorship known as Snuffy Smith Motor Company which, during the period here involved, was a duly licensed automobile dealer handling only used or second-hand cars. During the fourth quarter of 1959, taxpayer sold ten used Volkswagen automobiles which had been manufactured in Germany by a German company, sold there to various individuals, and eventually purchased and imported into this country by taxpayer.

Prior to the shipment of the cars to this country, taxpayer had them put through a process in Germany known as "Americanizing", which consisted, among other things, of the installation of a speedometer that registered in miles rather than kilometers and of sealed beam headlights. Upon importation into the United States, taxpayer paid the appropriate customs duty. Subsequently, he sold three of the ten cars to dealers for resale and the remaining seven to individuals. Each such sale was the first sale of the respective vehicle in the United States.

Taxpayer was not an authorized Volkswagen dealer. During the times here material, authorized dealers did not have a sufficient supply of new Volkswagens to

Stanley E. Neely, J. J. French, Jr. (of Locke, Purnell, Boren, Laney & Neely), Dallas, Tex., for appellant.

* Of the Second Circuit, sitting by designation.

meet the demand and taxpayer was able successfully to import and sell used Volkswagens.

In connection with the above ten sales, the Internal Revenue Service assessed a manufacturers excise tax against taxpayer in the amount of $1,399.70. This liability was computed by taking, with respect to sales to other dealers, 1/11th of the price for which the particular vehicle was sold and, with respect to the sales to individuals, 1/11th of the average price of the sales to dealers. Following denial of a claim for refund, taxpayer filed the instant suit in the district court.

Taxpayer contends that the manufacturers excise tax should not have been imposed on sales of used cars that are the products of Germany, first, because the tax is properly levied only on the first sale prior to, or at the time of, delivery to the first consumer and, second, because imposition of the tax on such sales is a failure to accord "national treatment" to the products of Germany as required by the Treaty of Friendship, Commerce and Navigation with Germany.

Section 4061,[1] in terms, applies to sales of automobiles by manufacturers, producers or importers and fails to specify different treatment for used or second-hand vehicles.[2] A predecessor[3] of the present statute, however, was construed by the Supreme Court, in a related context, to apply only to first or initial sales by one of the above-enumerated classes and not to subsequent sales of the same article. Indian Motocycle Co. v. United States, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277 (1931).

Following this decision, the Government did not attempt to impose this tax on sales by importers of second-hand vehicles originally manufactured and sold in the United States.[4] This administrative construction of the statute remained in force until 1951 when the Bureau of Internal Revenue issued a sales tax ruling[5] holding that the sale in the United States by an importer of an article, which had previously been shipped out of the United States tax free, was a taxable sale.

The validity of this ruling came before the Sixth Circuit in United States Truck Sales Co. v. United States, 229 F.2d 693 (1956). That court, after an extensive review of the legislative history of the predecessor of section 4061,[6] held that the tax is imposed only on the initial sale in the United States and that since the articles in question had been sold once before in the United States, even though that sale was exempt from taxation because made to the United States Government, the tax could not be levied on the second sale in the United States by the importer.

 The facts now presented to us do not match exactly the patterns of previously decided cases. However, the purpose and intent of section 4061 is to impose a tax on the initial sale made in the

---

1. Sec. 4061. IMPOSITION OF TAX.
 (a) Automobiles.—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to the specified percent of the price for which so sold:

 \* \* \* \* \*

 (2) Articles taxable at 10 percent except that on and after July 1, 1960, the rate shall be 7 percent—
 Automobile chassis and bodies other than those taxable under paragraph (1). A sale of an automobile, trailer, or semi-trailer shall, for the purposes of this paragraph, be considered to be a sale of the chassis and of the body.

2. The Congress was explicit, in Section 4221 of the 1954 Code, as amended by Section 119(a) of the Excise Tax Technical Changes Act of 1958, P.L. 85–859, in specifying the types of sales that were to be exempt from the otherwise universal tax; the sale of used cars is not among them.

3. Section 600 of the Revenue Act of 1924, 43 Stat. 253.

4. See S.T. 867, 1937–2 Cum.Bull. 505.

5. S.T. 938, 1951–2 Cum.Bull. 213.

6. Section 3403 of the Internal Revenue Code of 1939, 53 Stat. 410.

United States by a manufacturer, producer or importer. In our view, this construction more fully comports with the legislative purpose to provide "a comprehensive and convenient mode of reaching all first or initial sales," Indian Motocycle Co. v. United States, supra, 283 U.S. at 574, 51 S.Ct. 601, 75 L.Ed. 1277, while avoiding the possibility that the same article would be subject to the excise tax more than once.[7] Since the sales in question were the first sales of these articles in the United States, they are subject to the tax.[8] United States Truck Sales is not authority at variance with this determination. In that case, exemption from the tax which otherwise would have been imposed on the first sale was based upon the tax-exempt character of the purchaser, i. e., the Government.

■ Taxpayer contends that if the sales of these used Volkswagens are so subject to the tax, its imposition is a failure to accord "national treatment" to the products of Germany as required by the Treaty of Friendship, Commerce and Navigation with Germany.[9] Article XVI of that treaty provides:

"1. Products of either party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment in all matters affecting internal taxation, sale, distribution, storage and use."

Article XXV defines "national treatment" as follows:

"1. The term 'national treatment' means treatment accorded within the territories of a Party upon terms no

less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of such Party."

Taxpayer reads the United States Truck Sales case, supra, to hold that an importer's sales of used cars of United States origin are not subject to the tax. From this he reasons that imposition of the tax on an importer's sales of used cars of German origin violates the treaty because it affords less than "national treatment" to the products of Germany. This argument must fail because it rests on the erroneous premise that the criterion of taxability is the origin of the goods involved.

As noted earlier, the basis of the Sixth Circuit's holding in United States Truck Sales that the excise tax could not be imposed on the importer's sale of the used trucks there involved was that those trucks had been the subject of a prior sale in the United States. To be sure, those trucks were manufactured in the United States but that fact did not enter into the reasoning of the court. As the court said:

"We agree with the construction given to the statute by the Supreme Court in Indian Motocycle Co. v. United States, supra, that the tax is an excise tax and imposed only on the initial sale in the United States." 229 F.2d at 697.

Thus, the determinative question is whether the article has been previously sold in this country, and not whether the

---

7. The legislative history of section 4061 and its predecessors makes quite clear that Congress had no desire to impose the tax more than once on any given article. See e.g., H.R.Rep.No.708, 72d Cong., 1st Sess. 32 (1932); H.R.Rep.No. 586, 82d Cong., 1st Sess. (1951); S.Rep. No.781, 82d Cong., 1st Sess. (1951).
Appellant urges that this legislative history demonstrates the Congressional desire that the tax be imposed only on "new" and not on "used" articles. Taking the history as a whole, however, it is evident that the Congress was concerned that the tax not be imposed twice, not

that sales of used cars be exempt from the tax even if never before subjected to the tax. See The Slavenburg Corporation v. United States, 207 F.Supp. 314 (S.D.N.Y.1962).

8. This conclusion is in accord with two recent district court decisions; Circle Discount Corp. v. United States, 211 F. Supp. 743 (D.D.C.1962); The Slavenburg Corp. v. United States, supra, note 7, and with Rev.Rul. 58–297, 1958–1 Cum.Bull. 401.

9. [1956] 7 U.S.T. & O.I.A. 1839.

article was manufactured in the United States or in Germany. Consequently, the products of German origin and those of American origin receive precisely the same excise tax treatment, whether sold as new or used articles. Both are taxed on the first sale in this country. Since the treaty only requires equality of treatment for products that are "in like situation," Art. XXV, supra, it cannot be invoked to prevent taxation of the vehicles in question.

Taxpayer next contends that if these sales are subject to the excise tax, the tax should have been computed under Section 4216(b) (1) of the Internal Revenue Code of 1954 [10] on a price not greater than the highest price for which such articles are sold to wholesale distributors in the ordinary course of trade by manufacturers or producers thereof.[11]

Section 4216(b) (1) provides that if an article is sold at retail, the manufacturers excise tax shall be computed upon the lower of (1) the price for which the article is sold, or (2) the highest price for which such articles are sold to wholesale distributors in the ordinary course of trade by the manufacturers or producers thereof.[12] The purpose of this "Constructive Sale Price" provision is to achieve a uniform price basis to which to apply the excise tax rate. This is explained in the pertinent Senate Report (S.Rep. No. 2090, 85th Cong.2d Sess. (1958), U.S.Code Congressional and Administrative News, pp. 4395, 4415) as follows:

"This provision, to some extent, recognizes the desirability of imposing manufacturers excise taxes on a uniform base, even though various manufacturers may sell the same articles at different levels of distribution. In the case of two taxable articles ultimately sold to the consumer for the same price, exclusive of tax, the House report suggested there was no reason for imposing substantially different amounts of manufacturers tax merely because one manufacturer chooses to sell his article to a distribtor, while the other sells his to a dealer.

\* \* \* \* \* \*

"Your committee is in full agreement with the House that substantially different amounts of manufacturers' excise tax should not be imposed with respect to the same type of items merely because one manufacturer chooses to sell his article to a retailer or consumer while the other sells his to a wholesaler."

The Government answers taxpayer's claim by asserting that section 4216(b) (1) is inapplicable to the sales in question, first, because Congress intended that the constructive sales price was to be selected only from among those prices that are subject to the tax and since sales by the Volkswagen manufacturer to wholesale distributors in Germany are not subject to the tax, a constructive sales price based on such sales cannot be used. Second, the Government asserts that the constructive price is to be fashioned on the basis of sales of "such articles" by manufacturers

---

10. (b) Constructive Sale Price.
 (1). In General—If an article is—
 (A) sold at retail,
 (B) sold on consignment, or
 (C) sold (otherwise than through an arm's length transaction) at less than the fair market price,
the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary or his delegate. In the case of an article sold at retail, the computation under the preceding sentence shall be on whichever of the following prices is the lower: (i) the price for which such article is sold, or (ii) the highest price for which such articles are sold to wholesale distributors, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary or his delegate. This paragraph shall not apply if paragraph (2) applies.

11. Taxpayer concedes that paragraph (2) does not apply because he does not sell regularly to one or more persons who may be considered wholesale distributors.

12. Concededly, seven of the sales in question were sales at retail.

or producers thereof and that since manufacturers do not sell used cars, this provision is inapplicable.

The Government's first contention is sufficiently answered by its own administrative construction of section 4216(b) (1). The Regulation to that section provides in part:

> "Where a manufacturer, producer, or importer sells an article at retail, the tax on his retail sale ordinarily will be computed upon the highest price for which similar articles are sold by him to wholesale distributors. However, in such cases it must be shown that he has an established bona fide practice of selling such articles in substantial quantities to wholesale distributors. *If he has no such sales to wholesale distributors, a fair market price will be determined by the Commissioner.* In any case the price so determined shall not be in excess of the actual price for which the article is sold by him at retail." Treas. Reg. § 148.1–5(b) (1) (emphasis added)

The statute, and this regulation, have been construed by the Commissioner to call for "the determination of a constructive sale price in a manner which generally equates the tax with that which would be paid if the articles were sold to wholesale distributors in the ordinary course of trade." Rev.Rul. 63–37, 1963 Int.Rev.Bull. No. 11, at 17, 18. In the case of automobiles sold only at retail by an importer, the constructive sales price is taken to be a percentage of their "established retail list price," but not less than the importer's cost of the automobiles. Ibid; Rev.Rul. 54–25, 1954–1 Cum. Bull. 358 (75% of retail list price). See also Rev.Rul. 206, 1953–2 Cum.Bull. 429 (55% of retail list price of pianos sold by importer).

Thus, the Commissioner has in the past found no lack of legislative authority for computation of a constructive sales price merely because the sales of the article by manufacturers have taken place in foreign countries; nor has he experienced any major administrative difficulty in so doing.

■ The Government would have us next construe the words "such articles" so as to conclude that there is no proper statutory base for computation of a constructive sales price for these used cars because manufacturers do not sell used cars to wholesale distributors. This is too narrow an approach to the legislation. The Regulation quoted above speaks in terms of "similar articles". See also Fitch Co. v. United States, 323 U.S. 582, 587, 65 S.Ct. 409, 89 L.Ed. 472 (1945). We are of the view that the statutory language is sufficiently broad to bring the sales in question within the Congressional desire to equate generally the tax on sales at retail with that which would be paid if the articles were sold to wholesale distributors in the ordinary course of trade. See Rev.Rul. 63–37, supra. The cause must be reversed and remanded for determination of "a fair market price" for these sales using, to the extent appropriate, the percentage applied to retail sales of new cars by importers. See E. Albrecht & Son, Inc. v. Landy, 114 F.2d 202 (8th Cir., 1940); Brown v. Campbell, 163 F.Supp. 471 (N.D.Tex.1958). Accepting the Government's position would result in imposition of a higher excise tax on sales by importers of used cars than on similar sales of new cars. Neither the statute nor its purpose requires such a result.

■ The Government lastly argues that the three sales by taxpayer to dealers were not sales at retail and thus do not qualify for treatment under section 4216(b) (1). We agree. The Senate Report on the 1958 bill which put section 4216(b) (1) in its present form states that it provides for a constructive sale price where, among other situations, "an article is sold at retail (i. e., to consumers)." S.Rep. No. 2090, 85th Cong., 2d Sess. (1958). Sales to dealers for resale are not sales to consumers and thus are

not made at retail.[13] Since the constructive price provision does not apply to these three sales, use of the actual selling price as the base for computing the tax was proper.

Affirmed in part, reversed and remanded in part.

13. Taxpayer relies on Brown v. Campbell, 163 F.Supp. 471 (N.D.Tex.1958), to support his contention that the sales to dealers were sales at retail. But there it was expressly found that the sales in question were not for resale.