674

THE BRADFORD EXCHANGE A.G., a Swiss corporation, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, James Donnewald, Treasurer, Defendant-Appellee.

First District (4th Division)   Nos. 86—1036, 86—2277 cons.

Opinion filed April 23, 1987.—Rehearing denied May 21, 1987.

David J. Bradford, of Niles, and William D. Heinz and Edward J. Lewis II, both of Jenner & Block, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Bradford Exchange A.G. (taxpayer), brought these consolidated actions against the defendant, the Illinois Department of Revenue (Department), to recover $510,900.23 in retailers' occupation taxes, interest, and penalties which it paid under protest. In addition to seeking recovery of the sums paid, the taxpayer requested the trial court to declare the tax unconstitutional as applied to the taxpayer and to permanently enjoin the Department from the future imposition of the tax. The trial court denied the taxpayer's claims for relief on the merits and entered judgment in favor of the Department. The taxpayer has appealed, contending that: (1) the trial court erred in departing from the holding of the Illinois Supreme Court in *Miehle Printing Press & Manufacturing Co. v. Department of Revenue* (1960), 18 Ill. 2d 445, 164 N.E.2d 1, and applying instead the modern framework of tax analysis enunciated by the United States Supreme Court in *Michelin Tire Corp. v. Wages* (1976), 423 U.S. 276, 46 L. Ed. 2d 495, 96 S. Ct. 535; (2) the tax was unconstitutional even under the analysis set forth in *Michelin*; (3) the tax violated the United States-Swiss tax treaty; (4) the tax violated the foreign commerce clause of the United States Constitution (U.S. Const., art. I, sec. 8, cl. 3); (5) there was no statutory basis for the imposition of retailers' occupation tax on the taxpayer; and (6) the trial court erred in giving retroactive application to its ruling that the tax was constitutional and in holding the taxpayer liable for interest and penalties on the retroactive tax.

The taxpayer is a Swiss corporation headquartered in Zug, Switzerland, and is engaged in the business of selling limited edition collectors' plates manufactured outside of the United States. The taxpayer is a subsidiary of Bradford Exchange, Limited (Limited), which solicits sales for the taxpayer by mailing the taxpayer's sales brochures and order cards to Illinois residents. Orders for the taxpayer's plates are returned to Limited's computer processing center in Morton Grove, Illinois. Limited collects the customer payments and deposits the funds in the taxpayer's Chicago bank account. The taxpayer then ships the imported plates to an independent fulfillment company in Ontario, Canada, which causes the plates to be forwarded either through a common carrier or through the mail to Illinois customers. Legal title and risk of loss passes to the customer in Canada when the plates are delivered to the common carrier. The taxpayer pays an import duty in the form of customs charges on the plates.

In 1982, the Department conducted an audit of Limited and questioned whether the taxpayer was liable for taxes under the Retailers' Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1985, ch. 120, par. 440 *et*

*seq.*) based on its sales of imported plates to Illinois customers. ROTA imposes a tax on the occupation of selling tangible personal property at retail and is measured by the gross receipts of the sales. Section 441 specifically provides, however, that "such tax is not imposed upon the privilege of engaging in any business in interstate commerce or otherwise, which business may not, under the constitution and statutes of the United States, be made the subject of taxation by this State." (Ill. Rev. Stat. 1985, ch. 120, par. 441.) In response to the Department's inquiry concerning the application of ROTA to the taxpayer, a vice-president of Limited wrote a letter stating that in *Miehle Printing Press & Manufacturing Co. v. Department of Revenue* (1960), 18 Ill. 2d 445, 164 N.E.2d 1, the Illinois Supreme Court held that the imposition of ROTA upon an importer engaged in the business of selling imported goods to Illinois customers violated the import-export clause of the United States Constitution (U.S. Const., art. I, sec. 10, cl. 2). Although the letter mentioned the United States Supreme Court decision in *Michelin Tire Corp. v. Wages* (1976), 423 U.S. 276, 46 L. Ed. 2d 495, 96 S. Ct. 535, it attempted to distinguish that decision on its facts. The letter further argued that the imposition of ROTA would violate the foreign commerce clause and the United States-Swiss tax treaty. In connection with its discussion of the treaty, the letter stated that, "[s]ince Switzerland would not tax Illinois residents if the facts in the instant case were reversed, Illinois may not tax Swiss residents in the current situation." The Department completed its audit of Limited without issuing a notice of tax liability to the taxpayer.

On December 2, 1985, during a subsequent audit of Limited, the Department notified the taxpayer that it was liable for "Illinois Retailers' Occupation Tax, Municipal Retailers' Occupation Tax, and RTA Retailers' Occupation Tax" based on its sales of imported plates to Illinois customers. The Department stated its conclusion that the evidence showed that the contract for the sale of the plates is formed in Illinois and that the taxes would apply unless the taxpayer "presents substantial evidence indicating that the offer or counter-offer is accepted by the seller outside of Illinois." The notice further stated that the taxes, plus interest and penalties, would be assessed for the period since July 1, 1981.

Upon receiving the notice, the taxpayer paid under protest taxes in the amount of $338,729.19 for the period from July 1, 1981, through March 31, 1986, and filed suit seeking recovery of the taxes as well as declaratory and injunctive relief. In a memorandum in support of the requested relief, the taxpayer stated that because the tax was unconstitutional, it was "unnecessary to determine whether there is an Illi-

nois sale that suffices for statutory purposes."

On April 22, 1986, the trial court denied the taxpayer's motion for a preliminary injunction and granted judgment in favor of the Department in the amount of $338,729.19. In order to preserve the status quo, the court enjoined the Department from transferring that sum to the General Treasury during the pendency of this appeal.

The Department thereafter determined that the taxpayer owed $162,171.04 in interest and $17,539 in penalties for the period from July 1, 1981, through December 31, 1985. The taxpayer paid these amounts under protest and filed a second suit to recover them. On August 18, 1986, the trial court denied the taxpayer's request for a refund and enjoined the Department from transferring the $179,710.04 to the General Treasury. In this consolidated appeal, the taxpayer challenges both the imposition of the tax and its liability for the interest and penalties.

The taxpayer first contends that the Illinois Supreme Court decision in *Miehle Printing Press & Manufacturing Co. v. Department of Revenue* (1960), 18 Ill. 2d 445, 164 N.E.2d 1, held on facts indistinguishable from those in the case at bar that the imposition of ROTA on an importer engaged in the business of selling imported goods violates the import-export clause of the United States Constitution (U.S. Const., art. I, sec. 10, cl. 2). The taxpayer argues that *Miehle* has never been overruled and was therefore binding authority on the trial court. The Department disagrees, claiming that the United States Supreme Court decision in *Michelin Tire Corp. v. Wages* (1976), 423 U.S. 276, 46 L. Ed. 2d 495, 96 S. Ct. 535, expressly rejected the rationale employed in *Miehle* and adopted in its place an entirely new analysis for determining whether a State tax violates the import-export clause. The Department maintains that under these circumstances, the *Miehle* decision was no longer valid precedent and that the trial court acted properly in departing from it. A brief discussion of the holdings in *Miehle* and *Michelin* is necessary for an understanding of this issue.

In *Miehle*, the State attempted to impose ROTA upon a taxpayer engaged in the business of importing European-made printing presses into Illinois for sale to Illinois customers. The taxpayer objected on the ground that any State tax on the imported presses would violate the import-export clause, which provides that: "[N]o State shall, without the Consent of the Congress, lay any Imports or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection Laws ***." (U.S. Const., art. I, sec. 10, cl. 2.) At the time of the *Miehle* decision, the lead case involving the interpretation of the import-export clause was *Brown v. Maryland* (1827), 25 U.S. (12

Wheat.) 419, 419, 6 L. Ed. 678, which held that imported goods are immune from State taxation as long as they retain their status as imports by remaining in their original import packages. The *Brown* court reasoned that a tax upon "the property of the importer, in his warehouse, in the original form or package in which it was imported *** is too plainly a duty on imports to escape the prohibition in the constitution." (25 U.S. (12 Wheat.) 419, 441-42, 6 L. Ed. 2d 678, 686.) This analysis became known as the "original package" doctrine and provided the sole rationale for the Illinois Supreme Court's decision in *Miehle.* In employing the original-package doctrine to hold the State tax unconstitutional, the *Miehle* court acknowledged widespread criticism of the doctrine but concluded that "[t]here is nothing to indicate that the Supreme Court has changed the view it has taken with regard to imports held for sale." *Miehle Printing Press & Manufacturing Co. v. Department of Revenue* (1960), 18 Ill. 2d 445, 448, 164 N.E.2d 1, 3.

This change of view came about when the United States Supreme Court announced its decision in *Michelin Tire Corp. v. Wages* (1976), 423 U.S. 276, 46 L. Ed. 2d 495, 96 S. Ct. 535. *Michelin* involved a challenge to the constitutionality of Georgia's nondiscriminatory *ad valorem* property tax as applied to imported goods held for sale in a warehouse in their original packages. The *Michelin* court expressly rejected the original-package doctrine, concluding that it was based upon a misinterpretation of the import-export clause. The court then reexamined the clause in light of the purpose for which it was drafted and concluded that the framers of the Constitution sought to alleviate three main concerns in committing to the Federal government the sole power to lay imposts and duties on imported goods. First, the framers recognized that the Federal government must "speak with one voice" when regulating commerce with other nations and that State taxes applied in a manner inconsistent with Federal policy would impair its ability to do so. (423 U.S. 276, 285, 46 L. Ed. 2d 495, 503, 96 S. Ct. 535, 540.) Second, import revenues were to be the Federal government's major source of revenue and should not be diverted to the States. Third, the framers were concerned that seaboard States would use their geographically favorable locations to exact transit fees on goods merely passing through their ports to inland States, thus causing disharmony among the States. The court held that if a State tax offended none of these three concerns, it was not a prohibited "impost or duty" within the meaning of the import-export clause.

The *Michelin* court then applied this analysis to the Georgia *ad valorem* property tax and found that the tax was constitutionally permissible. First, because the tax was applied in a uniform manner to all

property located in the State, it could not be used to create protective tariffs for domestic goods or selectively applied to discourage importation. In discussing this first factor, the court emphasized that the tax did not "fall on imports as such because of their place of origin." (423 U.S. 276, 286, 46 L. Ed. 2d 495, 504, 96 S. Ct. 535, 541.) Second, the tax did not deprive the Federal government of taxes to which it was entitled because it retained the right to impose a tax on the privilege of bringing goods into the country. Rather, the State tax merely compensated the State for such services as police and fire protection. In this regard, the court stated that "there is no reason why an importer should not bear his share of these costs along with his competitors handling only domestic goods." (423 U.S. 276, 286, 46 L. Ed. 2d 495, 504, 96 S. Ct. 535, 541.) Third, the Georgia tax did not amount to a transit fee for the privilege of moving through the State because the goods, having come to rest in the importer's warehouse, were no longer in transit. The court has since acknowledged that the *Michelin* decision initiated "a fundamentally different approach to cases claiming the protection of the Import-Export Clause." *Limbach v. Hooven & Allison Co.* (1984), 466 U.S. 353, 359, 80 L. Ed. 2d 356, 362, 104 S. Ct. 1837, 1841.

■■ ■ It is against this framework that we consider the taxpayer's contention that the trial court in the instant cause was bound to follow the *Miehle* decision despite the fact that the basis for its rationale has since been rejected by the United States Supreme Court. We find no merit to that contention. ROTA exempts from its purview any business which may not, under the constitution and statutes of the United States, be made subject to State taxation. (Ill. Rev. Stat. 1985, ch. 120, par. 441.) The taxpayer contends that the tax in question violates the import-export clause. Thus, the central issue in this cause involves the interpretation of a provision of the United States Constitution. In such matters, the United States Supreme Court is the final arbiter and its holdings are binding on every court in the land. (*People v. Loftus* (1948), 400 Ill. 432, 436, 81 N.E.2d 495, 499.) In *McGoon v. Shirk* (1870), 54 Ill. 408, the Illinois Supreme Court held that the trial court erred in following its decisions involving the interpretation of an act of Congress rather than contrary decisions of the United States Supreme Court. Accordingly, we believe that the trial court in the case at bar acted properly in departing from the holding in *Miehle*.

■ The taxpayer then advances another argument in support of its contention that the trial court erred in applying the *Michelin* analysis to the tax in the case at bar. It points out that *Michelin* dealt with goods that had come to rest in an importer's warehouse and were

therefore no longer in transit. The taxpayer claims that the *Michelin* decision provides no authority for the instant cause because the goods here are taxed before they have entered the State and while they "are on their way to become incorporated with the general mass of property in Illinois." This appears to be no more than an attempt to resurrect the original-package doctrine (see *Michelin Tire Corp. v. Wages* (1976), 423 U.S. 276, 296-97, 46 L. Ed. 2d 495, 509, 96 S. Ct. 535, 546), and we find it unpersuasive as support for the taxpayer's argument that the goods here are "in transit" within the meaning of the import-export clause.

A reading of *Michelin* and *Department of Revenue v. Association of Washington Stevedoring Cos.* (1978), 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388, gives a rather clear indication of the meaning of the term "in transit" within the context of import-export clause analysis. The term was used by the *Michelin* court in its discussion of the third concern of the framers, *i.e.*, the levying of taxes which could be imposed only because of the favorable geographic location of certain States. (*Michelin Tire Corp. v. Wages* (1976), 423 U.S. 276, 290, 46 L. Ed. 2d 495, 506, 96 S. Ct. 535, 543.) Disharmony among the States was seen as a distinct possibility if a seaboard State could tax goods which had no connection with that State other than the fact that they had to pass through it on their way to inland States. The *Michelin* court concluded that "[i]n effect, the Clause was fashioned to prevent the imposition of exactions which were no more than transit fees on the privilege of moving through a State." (423 U.S. 276, 290, 46 L. Ed. 2d 495, 506, 96 S. Ct. 535, 543.) The court then suggested that if the goods are "merely in transit through the State," even a nondiscriminatory property tax might be prohibited. (423 U.S. 276, 290, 46 L. Ed. 2d 495, 506, 96 S. Ct. 535, 543.) However, because the imported goods in the *Michelin* case had come to rest in the importer's warehouse, the court was not directly concerned with the constitutionality of the State tax upon goods in transit.

In its subsequent decision in *Department of Revenue v. Association of Washington Stevedoring Cos.* (1978), 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388, the court was faced with deciding the constitutionality of a State tax on the occupation of stevedoring as measured by the gross receipts of the business. The court held that although the tax was imposed while the goods were in transit, it was permissible because it did not fall upon the goods themselves. In doing so, the court noted that "the Framers apparently did not include 'Excises,' such as an exaction of the privilege of doing business, within the scope of 'Imposts' or 'Duties.' " 435 U.S. 734, 759, 55 L. Ed. 2d 682, 703, 98 S. Ct.

1388, 1404.

Based on the decisions in *Michelin* and *Washington Stevedoring*, we are unpersuaded by the taxpayer's argument that the goods in the instant cause are "in transit" and therefore not subject to even a non-discriminatory occupation tax. First, we do not believe the goods can be characterized as "in transit" within the meaning of the import-export clause merely because they are in the process of entering the State of their destination at the time the tax is imposed. We must therefore reject the taxpayer's attempt to distinguish *Michelin* on the grounds that it concerned only goods which were not in transit. Second, the tax in question does not fall on the goods themselves, but rather on the privilege of engaging in the business of selling goods at retail as measured by the gross receipts of the sales. (*Superior Coal Co. v. Department of Revenue* (1954), 4 Ill. 2d 459, 465, 123 N.E.2d 713, 716.) Thus, even if we were to accept the taxpayer's argument that the goods are in transit, the tax would still be permissible under the United States Supreme Court decision in *Washington Stevedoring*. The taxpayer's reliance on *Richfield Oil Corp. v. State Board of Equalization* (1946), 329 U.S. 69, 91 L. Ed. 80, 67 S. Ct. 156, in arguing that an occupation tax measured by the value of the goods sold is the equivalent of a tax on the goods themselves is unpersuasive in that *Richfield* was decided prior to *Michelin* and "ignores the central holding of *Michelin* that the absolute ban is only of 'Imposts or Duties' and not of all taxes." *Department of Revenue v. Association of Washington Stevedoring Cos.* (1978), 435 U.S. 734, 759, 55 L. Ed. 2d 682, 703, 98 S. Ct. 1388, 1404.

■ In our view, the trial court properly applied the three-part *Michelin* analysis to conclude that the retailers' occupation tax imposed by the Department is not a constitutionally prohibited impost or duty on imports. First, with respect to the Federal government's need to deal uniformly with foreign nations, it is significant to note that the tax is a nondiscriminatory exaction applied without regard to the origin of the goods. Because the tax is nondiscriminatory, there is no danger that imports will be selectively taxed based upon their foreign origin or that States will be able to apply the tax in a manner which would create a protective tariff for domestic goods. Second, the tax does not divert Federal revenues to the State. Unlike Federal customs charges, which fall upon the privilege of bringing goods into the country, the tax here is an exaction by which the State apportions the cost of State services among the beneficiaries according to their wealth. As stated in *Michelin*, there is no reason why an importer of foreign goods should receive preferential treatment by being allowed to escape

from State taxes imposed uniformly and without discrimination upon all persons doing business in the State. Third, because the goods are not destined for other States, there is no danger that the State exaction is a transit fee on the privilege of moving through the State.

We will next address the taxpayer's contention that imposition of the tax constitutes a violation of the United States-Swiss tax treaty (Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, May 24, 1951, 2 U.S.T. 1751, T.I.A.S. No. 2316). The taxpayer interprets article XVIII, section 3, of the treaty as prohibiting the United States from taxing Swiss citizens more than Switzerland would tax United States citizens residing in Switzerland. The provision in question is worded as follows:

> "The citizens of one of the contracting States shall not, while resident in the other contracting State, be subjected therein to other or more burdensome taxes than are the citizens of such other contracting State residing in its territory."

■■ ■ Contrary to the interpretation advanced by the taxpayer, the. plain wording of this provision appears to prohibit the United States from discriminating against Swiss citizens residing in the United States by taxing them more heavily than United States citizens. This is a common treaty provision, and there is no suggestion that the instant tax is discriminatory in this sense. (See *Japan Line, Ltd. v. County of Los Angeles* (1979), 442 U.S. 434, 439 n.3, 60 L. Ed. 2d 336, 342 n.3, 99 S. Ct. 1813, 1816 n.3; *United States v. Romano* (2d Cir. 1983), 706 F.2d 370, 376-77; *Smith v. United States* (5th Cir. 1963), 319 F.2d 776, 779.) However, even if we were to accept the taxpayer's interpretation, there is nothing in the record other than the taxpayer's bare assertion that Switzerland would not tax United States citizens in similar circumstances. Although the taxpayer contends that the Department's failure to deny this assertion has resulted in an admission, it is well established that such failure to deny will result in the admission of only well-pleaded facts as opposed to conclusions of law. (*Stiefel v. Illinois Union Insurance Co.* (1983), 116 Ill. App. 3d 352, 355-56, 452 N.E.2d 73, 76.) The interpretation of a foreign nation's laws is a matter of law to be decided by the court. Ill. Rev. Stat. 1985, ch. 110, par. 8—1007.

■■ The next contention raised by the taxpayer is that the Department's imposition of ROTA on a foreign corporation violates the foreign commerce clause of the United States Constitution, which provides that: "Congress shall have Power *** To regulate Commerce with foreign Nations ***." (U.S. Const., art. I, sec. 8, cl. 3.) To support

this argument, it relies primarily upon the United States Supreme Court decision in *Japan Line, Ltd. v. County of Los Angeles* (1979), 441 U.S. 434, 60 L. Ed. 2d 336, 99 S. Ct. 1813. *Japan Line* involved the constitutionality of a California property tax as applied to shipping containers owned by Japanese companies and used exclusively in foreign commerce. It was stipulated that the containers were subject to property tax in Japan and that they were in fact taxed there.

In addressing the commerce clause issue, the court reiterated its earlier holding that before a State may tax goods in interstate commerce, it must be established that the tax "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." (*Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 279, 51 L. Ed. 2d 326, 331, 97 S. Ct. 1076, 1079.) It then went on to state that where the State seeks to tax the instrumentalities of foreign as opposed to interstate commerce, two additional considerations are present: the enhanced risk of multiple taxation and the need for the Federal government to "speak with one voice" when regulating commerce with foreign nations. This latter consideration is "much the same" as the first part of the *Michelin* import-export clause analysis discussed earlier in this opinion. *Japan Line, Ltd. v. County of Los Angeles* (1979), 441 U.S. 434, 449 n.14, 60 L. Ed. 2d 336, 348 n.14, 99 S. Ct. 1813, 1822 n.14.

Based upon these additional two considerations, the court in *Japan Line* invalidated the California property tax. Regarding the first consideration, the court found that multiple taxation was in fact present based upon the stipulation that Japan imposed a property tax on the shipping containers. It then stated that because one of the taxing entities was a sovereign nation which could tax the goods to the full extent of their value, there existed no forum which could guarantee a fair apportionment of the property tax. Second, based upon a stipulation that American-owned shipping containers were not taxed in Japan, the court found that the California tax created an international tax asymmetry working to Japan's disadvantage. It held that under these circumstances, Japan may be led to retaliate against not only California, but the United States as a whole. To the extent that other States followed California's lead, the ability of the Federal government to deal uniformly with foreign nations would be impaired.

Applying the rationale of *Japan Line* to the facts of the case at bar, we conclude that the taxpayer has established neither an enhanced risk of multiple taxation nor an impediment to the Federal government's ability to regulate commerce with foreign nations. Although the

taxpayer suggests that its goods flow through other nations and could possibly be taxed by Switzerland and Canada, as well as the United States and Illinois, there is nothing in the record to support this suggestion and we consider it mere speculation. Moreover, it is clear that the court in *Japan Line* was concerned with multiple taxation only insofar as a fair apportionment of the tax could not be guaranteed. Because the tax there was a property tax on the goods themselves, there existed a danger that the goods would be taxed more than once. The instant tax is an occupation tax measured by the gross receipts of the taxpayer's sales in Illinois. To the extent that only Illinois sales are calculated in determining the tax, no apportionment problem arises. The taxpayer's argument that Illinois may not impose any tax because the United States has already collected customs charges is without merit in light of the *Michelin* decision.

The taxpayer next contends that there is no statutory basis for the application of ROTA to its activities in Illinois because there are no facts showing a "sale or acceptance" in Illinois.

As stated earlier, the Department based its conclusion that the taxpayer was liable under ROTA on its finding that the contract for the sale of the plates is formed in Illinois and that the taxes would apply unless the taxpayer "presents substantial evidence indicating that the offer or counter-offer is accepted by the seller outside of Illinois." However, the taxpayer decided to challenge the tax only on constitutional grounds and specifically informed the trial court that because the tax was unconstitutional, it was "unnecessary to determine whether there is an Illinois sale that suffices for statutory purposes." In light of its express decision not to raise this issue in the trial court, the taxpayer will not be allowed to raise it for the first time on appeal. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.

The taxpayer next contends that even if the trial court correctly determined that the tax was constitutionally permissible under modern import-export clause analysis, its ruling should not have been given retroactive application. It argues that it justifiably relied upon existing law as set forth in *Miehle Printing Press & Manufacturing Co. v. Department of Revenue* (1960), 18 Ill. 2d 445, 164 N.E.2d 1, and that retroactive application of the trial court's ruling, which departed from the holding in *Miehle*, would be inequitable. In this regard, the taxpayer points out that the tax in question is intended to be collected from the customers, and that since the taxpayer did not do so, it would have to pay the retroactive tax out of its own profits.

In *Board of Commissioners v. County of Du Page* (1984), 103 Ill.

2d 422, 427, 469 N.E.2d 1370, 1372, the Illinois Supreme Court acknowledged that a decision will ordinarily be applied prospectively where it overrules clear past precedent on which a litigant may have relied or where retroactive application would produce inequitable results. In 1982, when the Department first raised the possibility of imposing ROTA on the taxpayer, *Miehle Printing Press & Manufacturing Co. v. Department of Revenue* (1960), 18 Ill. 2d 445, 164 N.E.2d 1, was the law in Illinois on the constitutionality of ROTA as applied to sales of imported goods. The taxpayer wrote a letter to the Department stating its reliance on *Miehle* and arguing that the tax violated the import-export clause, the United States-Swiss tax treaty, and the foreign commerce clause. The letter further argued that *Michelin Tire Corp. v. Wages* (1976), 423 U.S. 276, 46 L. Ed. 2d 495, 96 S. Ct. 535, was distinguishable on the ground that it involved the imposition of a State tax on a domestic rather than a foreign importer. The Department apparently failed to respond to the letter and completed the audit of the taxpayer's parent corporation without issuing a notice of tax liability to the taxpayer. As a result, the taxpayer failed to collect the tax from its customers. Under these circumstances, we do not believe it was incumbent upon the taxpayer to determine the extent to which the *Michelin* decision affected the viability of the Illinois Supreme Court holding in *Miehle*. For this reason, we conclude that the trial court's ruling of March 27, 1986, that the tax was constitutionally permissible should have been applied prospectively rather than retroactively. We therefore reverse that portion of its judgment awarding to the Department the taxes, penalties and interest which the taxpayer paid under protest.

Accordingly, we affirm that portion of the trial court's judgment holding the imposition of ROTA on the taxpayer constitutional and reverse that portion awarding to the Department the taxes, interest, and penalties paid under protest. We note in this regard that although the taxpayer in its appellate brief requests the amount of $510,900.23, it appears that the actual amount paid under protest was $518,439.23. We believe it is proper to remand the cause to the trial court for resolution of this discrepancy.

Affirmed in part; reversed and remanded in part with directions.

JOHNSON and LINN, JJ., concur.